JACK DALTON v. DOW CHEMICAL COMPANY AND ANOTHER.
TECT, INC., AND ANOTHER, THIRD-PARTY DEFENDANTS.
STANDARD ACCIDENT INSURANCE COMPANY, INTERVENOR.

158 N. W. (2d) 580.

April 19, 1968—No. 40,599.

*Carroll, Cronan, Roth & Austin* and *Harry H. Peterson,* for appellants.

*Tyrrell, Jardine, Logan & O'Brien* and *Graham Heikes,* for respondent Dow Chemical Company.

*Hammer, Weyl, Halverson & Waters,* for respondent Hawkins Chemical, Inc.

*Paul J. McGough, G. Alan Cunningham,* and *Wright Brooks,* for respondent Herald-Review, Inc.

NELSON, JUSTICE.

Plaintiff, Jack Dalton, and intervenor, Standard Accident Insurance Company, appeal from a judgment entered in favor of defendants, Dow Chemical Company and Hawkins Chemical, Inc., July 26, 1966, in the District Court of Pine County pursuant to an order granting their motion for summary judgment and dismissing the case on its merits.

Plaintiff was employed by Herald-Review, Inc., a newspaper publisher, at Grand Rapids, Minnesota, as a journeyman-pressman prior to August 26, 1957, and was exposed in his employment to various inks and chemicals, including the product manufactured by Dow Chemical Company known as "vythene." Plaintiff used vythene as a cleaning solvent. Early in 1957 plaintiff was experiencing blurred vision and nausea. Later in the spring of 1957, he became troubled with indigestion, urinary disorders, and heart palpitations. For perhaps a month before he became paralyzed on August 27, 1957, he suspected that the symptoms might be related to his exposure to vythene. Plaintiff had consulted various doctors in Grand Rapids who were unable to remedy his condition, and on August 28, 1957, he entered the University of Minnesota Hospitals. By that time he had developed a complete paralysis of his lower extremities.

During the fall of 1957 plaintiff discussed with various doctors treating him at University Hospitals his history of exposure to chemicals and the possibility of a relationship between his disability and the exposure. A tentative diagnosis was compression of a portion of the spinal cord with

cause unknown. A neurological examination on September 2, 1957, suggested a hemorrhage of a cord tumor as a result of a bleeding tendency caused by toxic exposure.

On September 19, 1957, the clinical impression, based on reports and examinations, was that the spinal cord damage and the resulting paraplegia were caused by exposure to the organic toxins of methyl chloroform and trichloroethylene. This diagnosis was given in a letter dated April 22, 1958, from Dr. Glenn Gullickson, Jr., of the University of Minnesota Medical School, to Arnold M. Bellis, the attorney representing plaintiff in a workmen's compensation proceeding instituted February 11, 1958. The letter stated in part:

"Examination of urine specimens submitted to the State Board of Health were reported on September 19, 1957 as having no lead, mercury or arsenic present. On the basis of exclusion of other disease processes, the clinical impression at that time as to the cause of the spinal cord damage and the resulting paraplegia, was exposure to the organic toxins of methyl chloroform and trichloroethylene.

\* \* \* \* \*

"Mr. Dalton's physical impairment is permanent and the prognosis is that there will be no return of function in the lower trunk and extremities or of bowel and bladder control. On a percentage basis his physical impairment is 100%. In my opinion the cause of the necrotizing lesion of the spinal cord which resulted in Mr. Dalton's paraplegia is the toxic effect of the organic solvents to which he was exposed prior to the onset of his illness. This assumption is based on the exclusion of other possible causes. A hemorrhage or a tumor of the cord was not noted when the cord was examined at the operation. A bacterial infection was ruled out by the negative culture of the cord specimen. The other toxic poisons such as lead and arsenic were not found on laboratory examinations. According to the evidence available, Mr. Dalton was certainly exposed to toxic concentration of the organic solvents he used in his work. There are no clinical tests to prove conclusively that these solvents were the toxins which caused the necrotizing lesion of the cord. However, on the basis of Mr. Dalton's symptoms prior to the acute onset of his illness

and the known effect of these solvents on nervous tissue, in my opinion the only feasible diagnosis is that of transverse myelopathy due to poisoning from methyl chloroform and/or trichlorethylene."

On November 5, 1957, Dr. Lyle A. French of the University of Minnesota Medical School, Division of Neurosurgery, also wrote a letter concerning plaintiff's condition. Dr. French stated that the etiology of plaintiff's spinal cord damage could not be stated with absolute definiteness but that he felt it could be due to a toxic process. Although plaintiff averred in an affidavit opposing defendants' motion for summary judgment that he did not learn that vythene had caused his disabilities until April 22, 1958, the petition seeking workmen's compensation, which he signed February 11, 1958, alleged his injury to be due to trichloroethylene and methyl chloroform poisoning. Not until January 27, 1964, almost 6½ years after plaintiff was admitted to University Hospitals, did he bring this action claiming damages as a result of negligence and breach of warranty on the part of defendants in selling these chemicals for public use.

The trial court in granting defendants' motion for summary judgment held that plaintiff's action was barred by Minn. St. 541.05, which provides that actions for "injury to the person or rights of another, not arising on contract" shall be commenced within 6 years.[1] Section 541.01 provides that "[a]ctions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues * * *."

■ Minn. St. 541.05 does not provide when the period of limitation begins to run, and that is the main question presented on this appeal.

---

[1] See, Brown v. Village of Heron Lake, 67 Minn. 146, 69 N. W. 710 (negligence); American Mutual Lia. Ins. Co. v. Reed Cleaners, 265 Minn. 503, 122 N. W. (2d) 178.

The 6-year statute of limitations also applies to plaintiff's count for breach of warranty whether we consider the action grounded on contract (Minn. St. 541.05[1]) or unintentional tort (§ 541.05[5]). See, Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670. We need not concern ourselves here with whether Minn. St. 336.2-725 will decrease the limitation period for bringing an action for breach of warranty from 6 years to 4 years, since that law did not become effective in this state until July 1, 1966.

As a general rule, the cause of action accrues when the accident occurs. American Mutual Lia. Ins. Co. v. Reed Cleaners, 265 Minn. 503, 122 N. W. (2d) 178. It is obvious that injustices could result from an application of the occurrence-of-the-accident test to the situation where the injured party does not discover that he has suffered any injury until after the period of limitation has run.

"* * * Quite recently there have been a wave of decisions meeting the issue head-on, and holding that the statute will no longer be construed as intended to run until the plaintiff has in fact discovered that he has suffered injury, or by the exercise of reasonable diligence should have discovered it." Prosser, Torts (3 ed.) § 30.

This rule was adopted by the United States Supreme Court in Urie v. Thompson, 337 U. S. 163, 69 S. Ct. 1018, 93 L. ed. 1282. The Urie case involved an F. E. L. A. claim arising out of an occupational disease, silicosis, caused by the continuous inhaling of silica dust. The court adopted the view of a California court that in this type of occupational disease case (337 U. S. 170, 69 S. Ct. 1025, 93 L. ed. 1293) —

" '* * * no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves * * *.' Associated Indemnity Corp. v. Industrial Accident Commission, 124 Cal. App. 378, 381 [12 P. (2d) 1075, 1076]."

In Daniels v. Beryllium Corp. (E. D. Pa.) 211 F. Supp. 452, 455, the court stated:

"We believe that where a plaintiff has full knowledge of the illness brought about by defendant's course of conduct the injury has been done and the statute of limitations begins to run at that time."

Similar holdings can be found in R. J. Reynolds Tobacco Co. v. Hudson (5 Cir.) 314 F. (2d) 776; Ricciuti v. Voltarc Tubes, Inc. (2 Cir.) 277 F. (2d) 809; Brush Beryllium Co. v. Meckley (6 Cir.) 284 F. (2d) 797. Thus, the rule in the Federal courts is that where injury is based on

exposure to infectious or deleterious chemicals, the date upon which the statute of limitations begins to run is the date on which the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, his illness.

Similar holdings can be found in Minnesota workmen's compensation cases involving occupational diseases. In Fink v. Cold Spring Granite Co. 262 Minn. 393, 404, 115 N. W. (2d) 22, 30, the court discussed when the statute of limitations in the Workmen's Compensation Act begins to run against an employee who has contracted silicosis:

"We have said that the contracting of silicosis is not a matter of a moment, or an occasion, but something which develops over a long period of time during which the victim keeps on contracting gradually through exposure until the breakdown, the clinical symptoms, arrives; that the disease is insidious so there is a continual build-up to the breaking point when disablement manifests itself and the injury finally occurs. The statute does not commence to run against the victim until he has 'contracted' the disease and the process of contracting the disease does not cease until physical impairment manifests itself."

See, also, Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378 (coronary sclerosis); Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 71 N. W. (2d) 787 (pulmonary berylliosis); and Yaeger v. Delano Granite Works, 236 Minn. 128, 52 N. W. (2d) 116 (silicosis).

In the instant case plaintiff experienced various symptoms beginning early in 1957 and suspected that the symptoms might be related to his exposure to vythene for about a month before he became paralyzed on August 27, 1957. During the fall of 1957 he discussed his history of exposure to chemicals and the possibility of a relationship between his disability and such exposure with the doctors treating him at University Hospitals. The clinical impression gained by the doctors there by September 19, 1957, was that the spinal cord damage and the resulting paraplegia from which plaintiff suffered were caused by the exposure to methyl chloroform and trichloroethylene. He was never again exposed to vythene after August 26, 1957.

Under the circumstances disclosed by the record herein, the action

would accrue at such time as it could be brought in a court of law without dismissal for failure to state a claim. Bachertz v. Hayes-Lucas Lbr. Co. 201 Minn. 171, 275 N. W. 694. An action for negligence cannot be maintained, nor does the statute of limitations begin to run, until damage has resulted from the alleged negligence. Thornton v. Turner, 11 Minn. 237 (336); Brush Beryllium Co. v. Meckley, *supra.* Thus, the alleged negligence (or breach of implied warranty as the case may be) coupled with the alleged resulting damage is the gravamen in deciding the date upon which the cause of action at law herein accrues.

■■■ Under our statutes it has been determined that ignorance of a cause of action not involving continuing negligence or trespass, or fraud on the part of the defendant, does not toll the accrual of a cause of action.[2] Since Cock v. Van Etten, 12 Minn. 431 (522), we have adhered to the rule that except where relief is sought on the ground of fraud the statute provides no exception in favor of those who may be ignorant of the existence of the cause of action. The period within which the action must be brought commences when the right of action accrues. This has been held to be the rule in many jurisdictions. The following Minnesota cases are controlling here: P. P. Mast & Co. v. Easton, 33 Minn. 161, 22 N. W. 253; Everett v. O'Leary, 90 Minn. 154, 95 N. W. 901; Weston v. Jones, 160 Minn. 32, 199 N. W. 431; Voegele v. Mahoney, 237 Minn. 43, 54 N. W. (2d) 15; Sollar v. Oliver Iron Min. Co. 237 Minn. 170, 54 N. W. (2d) 114. See, also, Jones v. Boyd Transfer & Storage Co. (8 Cir.) 323 F. (2d) 998.

Great reliance is placed by plaintiff upon Urie v. Thompson, *supra,* and another F. E. L. A. case, Burnett v. New York Cent. Ry. Co. 380 U. S. 424, 85 S. Ct. 1050, 13 L. ed. (2d) 941. An analysis of those cases, we think, makes it clear that they are not precedent for what plaintiff seeks to do by his common-law action here. In several of the other cases cited by plaintiff, namely, Blassingame v. Southern Asbestos Co. 217

---

[2] The purposes of statutes of limitations are the repose of the defendant and the fair and effective administration of justice. See, Order of R. Telegraphers v. Railway Exp. Agency, Inc. 321 U. S. 342, 64 S. Ct. 582, 88 L. ed. 788; Bachertz v. Hayes-Lucas Lbr. Co. 201 Minn. 171, 275 N. W. 694; 63 Harv. L. Rev. 1185.

N. C. 223, 7 S. E. (2d) 478; Bremner v. Marc Eidlitz & Son, Inc. 118 Conn. 666, 174 A. 172; Finch v. Ford Motor Co. 321 Mich. 469, 32 N. W. (2d) 712; and Dryden v. Omaha Steel Works, 148 Neb. 1, 26 N. W. (2d) 293, the issue under consideration was not the statute of limitations applicable to litigation generally but the notice requirement or statute of limitations affecting claims for workmen's compensation.

The record indicates that plaintiff was totally disabled, surgery was performed, diagnosis was made, testing of chemicals was performed, and a discussion of the possibility of the chemicals as causative agents in plaintiff's disability was accomplished, all of this more than 6 years prior to the commencement of the common-law action. Plaintiff admitted in his deposition that he had discussed with his attorney the possibility of bringing a lawsuit against the manufacturers and distributors of the chemicals as early as the summer of 1958. Plaintiff asserts, however, that all of this is not sufficient—that he must positively know of, not suspect, the causal relationship before the action he commenced accrues. The subjective determination of the accrual of his cause of action contended for by plaintiff is obviously without support in our decisions.

In Brush Beryllium Co. v. Meckley (6 Cir.) 284 F. (2d) 797, 800, quoting approvingly from United States v. Reid (5 Cir.) 251 F. (2d) 691, 694, the court said:

"* * * Ordinarily there is a coincidence of negligent act and the fact of some damage. Where that occurs the cause of action comes into being and the applicable statute of limitations begins to run even though the ultimate damage is unknown or unpredictable. But it is not the wrongful, i. e., negligent act, which gives rise to the claim. For there must be damage caused by it. Until there is *some* damage, there is no claim and certainly a statute prescribing the time in which suit must be filed (whether as a condition of right or remedy) can never operate prior to the time a suit would be permitted."

Plaintiff has cited several malpractice cases involving claims against a physician or clinic, among them Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633. Cases of the foregoing nature are of a class unto themselves and fail to lend support to plaintiff's position. Plaintiff has also

cited several cases not apposite to the present appeal for the reason that they hinge on a concept of continuing tort, whereas in the instant case it is uncontested that plaintiff's exposure to chemicals terminated August 26, 1957, more than 6 years prior to commencement of suit.

We agree with the analysis made by the trial court in its memorandum accompanying its order granting defendants' motions for summary judgment:

"As a result of clinical observation, tests and surgical exploration, the University Hospital doctors, on September 19th, 1957, diagnosed plaintiff's disability as spinal cord damage 'from exposure to the organic toxins of methyl chloroform and trichloroethylene.' Plaintiff was then paraplegic and was started on a therapy rehabilitation program. Dr. French, as early as November 5th, 1957, advised plaintiff that toxic process could have caused the severance of the spinal cord. Therefore, this Court cannot conclude that plaintiff and his physicians did not know or were unable to say what plaintiff's condition was, and what he was suffering from, prior to January 30th, 1958. Rather, the facts are conclusive that plaintiff's condition was 'known' on August 27th, 1957, and the reason therefor was 'known' not later than November 5th, 1957."

The judgment appealed from is affirmed.
Affirmed.