**CONTINENTAL GRAIN COMPANY,**
Appellee,

v.

**FEGLES CONSTRUCTION COM-
PANY, INC., Appellant.**

No. 72-1572.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1973.
Decided June 29, 1973.

Appeal from the United States District Court for the District of Minnesota. Hon. Earl R. Larson, U. S. D. C. Judge.

M. W. Gaughan, Minneapolis, Minn., for appellant.

Mary Jeanne Coyne, Minneapolis, Minn., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

STEPHENSON, Circuit Judge.

 This is a diversity case in which Fegles Construction Company, Inc. (Fegles) appeals from the denial by the trial court of its motion for a directed

---

* Of the Eastern District of Michigan, sitting by special designation.

verdict. The jury, by special verdicts, held that Fegles was negligent in its design and construction of a grain drier for appellee Continental Grain Company (Continental) and assessed Fegles' percentage of the total negligence to be 80%. Judgment in favor of Continental was entered in the sum of $56,060.39. Fegles contends (1) that the guarantee provision of the contract between the parties constitutes a complete defense to the action; (2) that the action is barred by two Minnesota state statutes of limitation on actions and (3) that there was insufficient evidence of negligence to warrant the trial court in submitting the case to the jury. For example, Fegles contends the damages which occurred were the result of settlement of the soil and fill for which it was not responsible under the contract. We are required, of course, to review the evidence in the light most favorable to the prevailing party who is entitled to the benefit of all inferences which could reasonably be drawn from the evidence. A. B. McMahan Company v. Amphenol Corporation, 443 F.2d 1072, 1076 (C.A.8 1971). We find the cause was properly submitted to the jury.

In 1959 Fegles contracted with Continental to design and construct a grain storage facility on Continental's property adjacent to the Minnesota River at Savage, Minnesota. The soil at the proposed site was soft, loose and unable to support the weight of substantial structures, necessitating the use of piling for support of the facilities to be constructed. The structure in question, a grain drier, was to be erected on a concrete slab which overlapped the foundation of adjacent grain silos. The silos' slab was supported by cast-in-place concrete piling. The remainder of the drier's slab, which rested upon 19 feet of fill, was to be supported by timber piling. All of Fegles' work with respect to the grain drier was completed by November 17, 1960.

Shortly after completion Fegles discovered a gap developing between the edge of the drier's foundation and the wall of the silos. By December 16, 1960, the gap had increased to 1½ inches with a ⅝ inch slope in the slab supporting the drier. In short, the edge of the slab supported by the wood piling was sinking. On February 27, 1961, Continental informed Fegles that the gap and slope had increased to 1⅝″ and 1⅜″ respectively; that the grain drier was "out of plumb" and should be "shimmed up" and that the slab's elevations should be periodically checked. On April 12, 1961, Fegles reported that "All movement appears to have ceased at this time. No corrective action contemplated immediately. Continued checking will be carried on." The next week Fegles informed Continental that all corrective work would be completed by the end of April. The grain drier was never shimmed but operated for eight years until January 3, 1969, when it toppled over to the ground. It was then discovered that the drier's slab had a slope of up to 7⅛″. Expert testimony was given to the effect that the drier collapsed because of (1) defective design in that one end of the slab was supported by concrete piling and the other by wood piling and (2) faulty construction of the foundation in that the wood piling had not originally been driven down to bedrock, so that later settling occurred at the end of the slab supported by the wood piling.

■■ We think it clear that sufficient evidence of negligence existed to warrant submitting the case to the jury. The record would support findings that Fegles had a duty to use reasonable care in the design and construction of the drier, that Fegles breached such duty, and that such breach was a direct cause of the drier's collapse and resulting damages.[1]

■ Fegles further contends that the guarantee provision of the contract con-

1. Fegles also contends in its briefs that *as a matter of law*, it could not be held liable for the drier's collapse because the

"sole, independent intervening, superseding cause of the collapse was [Continental's] lack of maintenance in failing to

stitutes a complete defense to the action. In paragraph 19 of the contract, Fegles guaranteed "all materials and workmanship for a period of two years after acceptance of the work by [Continental] and shall replace any defective materials and/or workmanship that may develop in this period without expense to [Continental]." The trial court held that the contract did not preclude this action for negligence and instructed the jury to remove such evidence from its consideration. The trial court's interpretation of applicable state law is entitled to great weight. Luke v. American Family Mutual Ins. Co., 476 F.2d 1015, at 1019 n. 6 (8th Cir., filed Nov. 2, 1972).

Continental's acceptance of the work became effective December 15, 1960.[2] Therefore, if appellant's contention is correct, Continental's remedies against Fegles for faulty design and construction became foreclosed on December 15, 1962.

■ In Minnesota, parties to a construction contract may limit their liability for negligence by providing exclusive remedies within the agreement. Great Northern Oil Co. v. St. Paul Fire and Marine Ins. Co., 189 N.W.2d 404, 407 (Minn.1971); Independent Consolidated School District No. 24 v. Carlstrom, 277 Minn. 117, 151 N.W.2d 784 (1967) and Independent School District No. 877 v. Loberg Plumbing & Heating Co., 266 Minn. 426, 123 N.W.2d 793 (1963). See, Clements Auto Company v. Service Bureau Corporation, 444 F.2d 169, 188 (C.A.8 1971). The contract, however, must clearly indicate the intent of the parties to make the stipulated remedies exclusive. *Independent No. 24, supra,* 151 N.W.2d at 786–787 (and cases cited at 787, n. 4). "The question of whether or not the remedy is exclusive turns upon the intention of the parties as revealed by the language of the contract as a whole; the specific provisions relating to the remedy; and all the facts of a particular case." *Independent No. 24, supra* at 787.

■ The object or purpose of the contract in question was the construction of a grain storage facility, including several large structures only one of which was the grain drier. The entire project took nearly 16 months to complete. With such a multitude of structures to be erected over a long period of time, the parties provided that Fegles would replace any defective materials or workmanship that might develop within two years following Continental's acceptance of the work. We believe, however, that this provision falls far short of providing either expressly or by clear implication, an exclusive remedy for negligence in design and construction. Paragraph 19 does not limit Fegles' liability for its negligence, but rather entitles Continental to demand corrective action to remedy defects without first showing fault by law attributable to Fegles. Furthermore, paragraph 5 of the contract states that payment by Continental does not operate to relieve Fegles "from its obligation or liability to replace any work if it be afterward discovered to have been improperly done . . . nor as a waiver . . . as to the durabil-

---

shim under the legs of the drier. Questions of causation, of course, are particularly for the jury to determine. And the jury was fully instructed in this respect. Here, however, appellant neither objected to the instructions on causation nor included the above contention as ground for its motion for judgment n. o. v. Appellant may not raise the contention for the first time on appeal and we could choose not to consider it. However, we note that the jury assessed 20% of the total negligence causing the collapse and

damage against Continental. Thus, undoubtedly the jury found that Continental was contributorily negligent in failing to shim the legs of the grain drier and assessed partial fault accordingly. We are satisfied that jury's findings as to negligence are supported by the evidence.

2. On January 11, 1961, one month prior to its "discovery" of the gap between the slab and adjacent silo. Continental agreed to December 15, 1960 as the acceptance date under the terms of the contract.

ity of the work.[3] Construing the contract in its entirety, we conclude that the contract does not evince a clear intent by the parties to provide an exclusive remedy for negligence in design and construction. Continental, therefore, is not prevented by the. terms of. the contract from maintaining this action.

■ Fegles also asserts that the action is barred by either of two Minnesota statutes of limitation on actions. Minn.Stat.Ann. § 541.05(1) and (4) provide for a 6 year limitation on actions upon a contract and for injured *personal* property. Since the case was submitted to the jury on the theory of negligence alone, § 541.05(1) is obviously inapplicable. We doubt the applicability of § 541.05(4)[4] but would also reject it for the reasons set forth below in our discussion of the second limitation statute.

Minn.Stat.Ann. § 541.051 provides that no action to recover damages for any injury to property, *real or personal,* arising out of the defective condition of an improvement to real property, shall be brought against the person who designed or constructed the improvement more than *two years after discovery thereof,* nor in any event more than *10 years* following the completion of the construction.[5]

Construction of the grain drier was completed in November 1960. The drier toppled over on January 3, 1969, and this action was commenced on October 19, 1970. The action was brought within the 10 year period. However, Fegles charges that the defective condition was "discovered" by Continental within the meaning of the statute in late 1960 or early 1961, rendering the two-year limitation applicable. We disagree.

■■ Generally, a statute of limitation begins to run at the time of the negligent act. In Minnesota, the harshness of this rule has been recognized and the statute does not begin to run until damage has resulted. It is not necessary for the final or ultimate damages to be known or predictable, however, the statute begins to run when some damage occurs which would entitle the victim to maintain a cause of action. See Dalton v. Dow Chemical Co., 158 N.W.2d 580 (Minn.1968).[6] Section 541.051 also requires that the defective condition be first *"discovered"* before the two year period of limitation begins to run.

■ The record reveals that the slab settled at one end shortly after completion of the project and that Continental became aware of this movement. Fegles, however, in 1960 informed Continental that the slab had ceased to settle. The record also discloses that both parties had an expectancy of some settling of the fill below the slab upon which the

---

3. In *Independent No. 24, supra,* the contract provided for a one-year period in which the contractor was to remedy any defects and also provided that "final payment" constitutes a waiver of all claims other than those arising from faulty work appearing after final payment.

4. The question of whether a fifty foot high structure on a concrete slab which rest upon concrete and wooden piling constitutes *personal* property under Minnesota law was neither raised in the briefs nor argued.

5. Section 541.051 provides, in pertinent part

 Limitation of action for damages based on services or construction to improve real property.

 "Subdivision 1. Except where fraud is involved, no action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of any improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or construction of such improvement to real property more than two years after discovery thereof, nor, in any event more than ten years after the completion of such construction."

6. See also, Chrischilles v. Griswold, 260 Iowa 453, 150 N.W.2d 94, 99–101 (1967) (action against architect for negligent design) and Prosser, Law of Torts, § 30 (4th ed. 1971).

grain drier was affixed. Under these circumstances, we believe Continental was justified in accepting the structure which worked properly up until it collapsed on January 3, 1969. At the time the project was completed, Continental acquired a structure which it cannot be reasonably charged with knowing of the defective condition. The grain drier operated perfectly in spite of the minimal slope in the slab. Certainly no damage had yet occurred.[7] There is no evidence that Continental was aware of the further settling of the slab which occurred prior to the collapse of the drier in 1969. Therefore, we conclude that the two year limitation in the statute is not applicable to Continental's claim.

Affirmed.

---

7. Adopting Fegles' position, as was aptly pointed out at oral arguments, would flood the courts with suits by new home purchasers who have recently discovered a thin crack in their basement walls.