**GREENBRIER VILLAGE CONDOMINIUM TWO ASSOCIATION, INC., on Behalf of itself and its unit owners, Appellant,**

v.

**KELLER INVESTMENT, INC., et al., Franklin Construction Co., Inc., James M. Cooperman & Associates, et al., Dolan, Banister & Associates, Inc., Braun Engineering & Testing, Inc., E & H Earth Movers, Inc., Fabcon, Incorporated, Dalco Roofing and Sheet Metal, Inc., Respondents.**

No. C0–87–104.

Court of Appeals of Minnesota.

July 21, 1987.

John C. Rosholt, Minneapolis, for appellant.

Scott Ballou, Lasley, Gaughan, Stich & Angell, P.A., Denis R. Vogel, Hillstrom & Bale, Ltd., Thomas L. Adams, William M. Hart, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Richard J. Haefele, Chaska, Glenn E. Purdue, Lefevere, Lefler, Kennedy, O'Brien & Drawz, Eric Magnuson, Keith J. Kerfeld, Rider, Bennett, Egan & Arundel, Barbara A. Burke, Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, John H. Guthmann, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for respondents.

Considered and decided by PARKER, P.J., NIERENGARTEN and STONE, JJ.,* with oral argument waived.

## OPINION

PARKER, Judge.

Condominium homeowners' association brought suit on behalf of itself and the unit owners, pursuant to Minn. Stat. § 515A.3–102(a)(4) (1982), against the seller, developer, architect, general contractor and certain subcontractors of the project because of various defects in the building. The association alleged, *inter alia*, breach of contract, negligent design and construction, and breach of implied and express warranties. The trial court granted summary judgment to defendants based on the two-year statute of limitations in Minn. Stat. § 541.051, subd. 1 (1980), and the association appeals. We affirm.

## FACTS

Greenbrier Village Condominium Two, a 70–unit condominium building, was completed in 1977 and subsequently sold to appellant Greenbrier Village Condominium Two Association, Inc. (Greenbrier). The respondents are the original owner, the developer, the architect, the general contractor and certain subcontractors.

In September 1983 Greenbrier served its complaint upon the respondents, alleging the following defects:

1. Roof flashing does not extend at least 3 inches up stacks and other roof penetrations;

2. Basement ceiling mortar between planks must be replaced with a urethane sealant to remove a health hazard;

3. Patios have sunken;

4. Hallways lack vertical expansion joints and trim to cover cracks;

5. Units have cracks at the first interior ceiling-balcony plank joints, exterior wall-ceiling plank joints, and vertical joints between interior partitions and exterior walls, which should be treated with urethane sealant and trim;

6. Entrance walk has settled;

7. Exterior leaks water between planks and should be flashed or caulked; and

8. Flashing at the base of the roof has rusted, which should be replaced and vented;

\* \* \* \* \* \*

Respondents answered that the claim was barred by the two-year statute of limitations in Minn. Stat. § 541.051, subd. 1, for claims involving improvements to real property and conducted discovery to establish that the defects had been discovered prior to September 1981.

Discovery revealed a memorandum from the "Maintenance Committee and Board Members of Condo II," dated May 12, 1981, which stated, in pertinent part:

The following is a brief list of the items that CONDO II intends to pursue with

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

the Keller Corporation to repair or replace. We believe that there is either faulty engineering or construction that is giving us the problems. It may take a professional engineering firm to prove our claims.

1. The patios around the building on the ground floor have sunk anywhere from 2 to 6 inches. Improper backfilling may be the reason for the sinking.

2. The metal facia strip around the exterior of the building near the roof, is rusting from both the inside and the outside. The rust is staining the paint and the awnings on the outside of the building. From all appearances, the metal seems to be rusting through. The reason for the rusting should be found. Not being vented may be part of the trouble.

3. Several cracks or voids have appeared in the prestressed concrete, both on the inside and the outside. These cracks will have to be repaired and we should know why this is happening.

Discovery also produced a May 12, 1981, letter from the Minnetonka building inspector to respondent Robert Keller which showed the inspector had already been out to investigate tenants' complaints of structural cracking and settling patios.

Discovery further revealed the minutes of the association's monthly board meetings and of its 1980 and 1981 homeowners' meetings. The following excerpts are relevant to this appeal:

November 5, 1980: "The rusted flashing was discussed. Jeff is looking into different ways of taking care of this problem."

January 7, 1981: "The Carl Walters Engineering firm has been out to check into [falling plaster in the entryway] and other problems with the building. They will get back to us on this with a complete report. They are also looking into the flashing around the building. Jeff said a roofing company has been contracted to seal the verandas in front of each building to alleviate the water running into the lobby."

March 4, 1981: "Don Semple reported that he has received several replies from homeowners regarding structural faults observed in the building. Primary concern was expressed about the settling of first floor terraces, [and] rusting of trim near roof * * *."

April 1, 1981: "Les Dahl will return next week and bring us up-to-date on the structural problems in the different units."

May 6, 1981: "Don gave a briefing on the HOA meeting last week. Building 3 [appellant Greenbrier is known as building 6] had a contractor come in and go through the whole building. He said it would take $100,000 to put the building back into shape. Our condo attorney, Mr. Eide, will be here at 6:00 P.M. tomorrow night to tell us where we stand, legally, with Keller on this issue. There should be representatives from each building at this meeting.

* * *

Les Dahl mentioned the crack on the deck wall of the Samsky-Keller divider. There is also a crack on one of the patio floors on the west side of the building. He suggests that we call in an outside contractor to see why these cracks have developed.

The flashing was also discussed. Someone will have to go up on the roof and see why water is getting in and rusting the flashing."

June 3, 1981: "As to the structural defects in the building, we may have to decide whether or not to pay $1,500 to hire an engineering company to provide the documentation, etc. on all the problems, in order to make a presentation to Keller. Those present agreed 100% to the survey. Art and Don will now bring this agreement to the HOA meeting."

July 1, 1981: "The engineering firm we talked about using was at one time involved with our contractor, so we are now looking into another engineering firm. Four of the buildings will be going into this project."

August 5, 1981: "Les Dahl has been talking to the City Engineer about some

of our building problems. He has sent letters to Mr. Keller and Mr. Keller has agreed to give us a new metal chimney for the building at this time."

Based on the information contained in these documents, respondents moved for summary judgment, contending that Greenbrier's claims were governed by the two-year statute of limitations in Minn.Stat. § 541.051 (1980) and that Greenbrier discovered the defects prior to September 1981. The trial court granted summary judgment, and Greenbrier appeals.

## ISSUES

1. Does Minn.Stat. § 541.051, subd. 1, limit claims for damage due to defective workmanship in improvements to real property?

2. Did the trial court err in concluding that Greenbrier discovered the defects more than two years before commencement of suit?

## DISCUSSION

On appeal from summary judgment, it is this court's function to determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Dollander v. Rochester State Hospital*, 362 N.W.2d 386, 389 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. May 20, 1985).

### I

▮ Greenbrier contends the trial court erred in ruling that the two-year statute of limitations in Minn.Stat. § 541.051 (1980) applies to claims based on defective workmanship in the improvement itself. The parties cite case law from other jurisdictions construing their statutes; however, because of differing language, those cases are generally unhelpful. We agree with the trial court that amendments to section 541.051 show the legislature intended this section to limit actions alleging defective workmanship.

Section 541.051, subd. 1, currently provides, in pertinent part:

Except where fraud is involved, no action by any person *in contract, tort, or otherwise* to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery thereof * * *.

(Emphasis added).

The supreme court first construed this section in *Kittson County v. Wells, Denbrook & Associates, Inc.*, 308 Minn. 237, 241 N.W.2d 799 (1976). At that time the statute read, in pertinent part:

Except where fraud is involved, *no action* to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or construction of such improvement to real property more than two years after discovery thereof * * *.

Minn.Stat. § 541.051, subd. 1 (1976) (emphasis added).

In *Kittson*, under this version of the statute, the county brought an action against an architect, contractor and subcontractor, alleging breach of warranty and negligence in designing and installing a defective finish on the courthouse. The trial court granted summary judgment to the defendants, ruling that section 541.051, subd. 1, limited an action by an owner sounding in warranty and contract, and the supreme court reversed. It noted that, by referring merely to "no action," the statute "does not clearly specify what kinds of actions and what types of parties fall within its limitation provisions." *Id.* at 240, 241 N.W.2d at 801. Construing the statute narrowly to avoid constitutional questions,

the supreme court held that the section applied only to tort actions by persons not in privity with the defendants. *Id.* at 242, 241 N.W.2d at 802. It based this holding on the language of the statute and the fact that the legislation closely followed the abolition of the privity doctrine. *Id.* at 241–42, 241 N.W.2d at 801–02. The supreme court further explained its holding:

> [I]n contrast to the language of our statute, several of the similar statutes in other jurisdictions contain additional language which broadens their scope to include actions by owners sounding in breach of contract. *See, e.g., N.J.Stat. Ann. § 2A:14–1.1 (1952) pocket part ("No action whether in contract, in tort, or otherwise * *") * * *. If our legislature had intended § 541.051 to cover actions sounding in contract or in warranty, based on defective workmanship and brought by an owner against his architect or contractor, it could and should have included language similar to that of the New Jersey statute noted above.*

*Id.* at 242–43, 241 N.W.2d at 802 (emphasis added).

In 1980 the legislature did as the *Kittson* court suggested; it amended section 541.-051, subd. 1, by adding the words, "by any person in contract, tort, or otherwise," to describe the actions limited. *See* 1980 Minn.Laws, ch. 518, § 2.

Greenbrier points out that the New Jersey statute cited by the *Kittson* court provides an additional phrase, as emphasized in the following: "No action whether in contract, in tort, or otherwise *to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property * * *.*" *See* N.J.S.A. 2a:14—1.1, as quoted in *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662, 663 n. 1 (1972) (cited by *Kittson*, 308 Minn. at 240 n. 3, 241 N.W.2d at 801 n. 3) (emphasis added). Greenbrier argues that the Minnesota legislature's omission of the emphasized phrase manifests its intent to exclude actions for deficiencies in the improvement itself. However, we find the use of the identical words suggested by the *Kittson* court—"in contract, in tort, or otherwise" —to be dispositive of the legislature's intent to follow that court's suggestion for language "to cover actions sounding in contract or in warranty, based on defective workmanship and brought by an owner against his architect or contractor * * *." *Kittson*, 308 Minn. at 243, 241 N.W.2d at 802.

Greenbrier further argues that, without the emphasized phrase, the plain language of the statute does not encompass actions based on defective workmanship—that such claims do not come within the ambit of the phrase, "damages for any injury to property * * * arising out of the defective and unsafe condition of an improvement to real property * * *." We find the sweeping language of the amended statute sufficiently broad to encompass actions based on defective workmanship and hold that the trial court was correct in ruling that the two-year statute of limitations in section 541.051, subd. 1, applies to Greenbrier's claim.

## II

Greenbrier contends the trial court erred in concluding that the defects were discovered before September 1981. We agree with the trial court that the May 12, 1981, memo and the minutes of the meetings prove otherwise.

In *Bulau v. Hector Plumbing and Heating Co.*, 402 N.W.2d 528, 530 (Minn. 1987), the Minnesota Supreme Court cited with approval a decision of the Eighth Circuit Court of Appeals which interpreted the statute of limitations at issue here:

> Generally, a statute of limitation begins to run at the time of the negligent act. In Minnesota, the harshness of this rule has been recognized and the statute does not begin to run until damage has resulted. *It is not necessary for the final or ultimate damages to be known or predictable, however, the statute begins to run when some damage occurs which would entitle the victim to maintain a cause of action. See Dalton v. Dow Chemical Co.*, [280 Minn. 147], 158

N.W.2d 580 (Minn.1968). *Section 541.-051 also requires that the defective condition be first "discovered" before the two year period of limitation begins to run.*

*Continental Grain Co. v. Fegles Construction Co.,* 480 F.2d 793, 797 (8th Cir. 1973) (emphasis added; footnote omitted). In adopting the discovery rule in the context of cases involving latent occupational diseases, the supreme court in *Dalton v. Dow Chemical Co.,* 280 Minn. 147, 152, 158 N.W.2d 580, 583 (1968), cited with approval the federal rule that the limitation period begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, his injury. *See also* Keeton, Prosser and Keeton on Torts, § 30 (5th ed. 1984). Applying these principles together, we hold that the limitation period in section 541.051, subd. 1, begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, an injury sufficient to entitle him to maintain a cause of action. In this case this requires allegations of a breach and resulting damage. *See Dalton,* 280 Minn. at 153, 158 N.W.2d at 584 ("[T]he alleged negligence (or breach of implied warranty as the case may be) coupled with the alleged resulting damage is the gravamen in deciding the date upon which the cause of action at law herein accrues.")

■ Greenbrier's complaint gives notice of eight specific defects.[1] On appeal Greenbrier concedes the record conclusively establishes discovery of the sunken patios and the rusted flashings. The remaining defects include inadequate flashing, hazardous basement ceiling mortar, cracks in hallways, cracks in the units, settling of entrance walk, and exterior leaks requiring flashing or caulking. A review of the discovery documents convinces us that Greenbrier discovered the remaining defects before September 1981 and that its cause of

action for these defects and against these defendants arose before September 1981. Greenbrier urges that these defects differ from those discovered before September 1981 not only in degree, but in kind. However, the requirement is that there be a *cause of action;* Greenbrier did have one for such defects before September 1981. We do not find any of the specified defects (or those subsequently cited) sufficiently separate and distinct from those mentioned in the discovery documents to create a cause of action in addition to that which arose prior to September 1981.

Greenbrier also attempts to distinguish the discovery of *symptoms* of defective workmanship from the discovery of the underlying deficiency itself. However, "[i]t is not necessary for the final or ultimate damages to be known * * *." *Continental Grain Co.,* 480 F.2d at 797. We note that the discovery documents clearly show that Greenbrier not only noticed these defects, but suspected underlying structural deficiencies as early as May 12, 1981. According to the memo from the Condo II Maintenance Committee and board members,[2]

> We believe there is either faulty engineering or construction that is giving us the problems. It may take a professional engineering firm to prove our claims. * * * [The] cracks [in the prestressed concrete] will have to be repaired and we should know why this is happening.

The minutes of the meetings show that Greenbrier had already contacted one engineering firm before September 1981 (on January 7, 1981); made an appointment to meet with an attorney (May 6, 1981); discussed calling in an outside contractor (May 6, 1981); agreed to hire another engineering firm to make a survey (June 3, 1981); and talked to the city engineer (Au-

---

1. Greenbrier's complaint listed eight defects, adding, "as well as other defects which will be discovered and articulated during the course of this lawsuit." Relying on this language, Greenbrier attempts to add several other defects. However, for the reasons discussed below, we do not feel the subsequently discovered defects affect the result.

2. We reject Greenbrier's contention that this memo is inadmissible because it was never a part of its records. As the trial court noted, Greenbrier produced it in response to discovery requests, and its authenticity is not disputed.

gust 5, 1981). Yet it was not until September 1983 that a complaint was filed.

As stated by the Iowa Supreme Court in an action to recover damages for a negligently designed home:

> The question in any given case is not, What did plaintiff know of the injury done him? but, What might he have known, by the use of the means of information within his reach, with the vigilance which the law requires of him?

*Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94, 100 (1967) (citation omitted; cited with approval in *Continental Grain Co.,* 480 F.2d at 797 n. 6). Based on these facts, we can only conclude that Greenbrier clearly discovered defects before September 1981 sufficient to state a cause of action.

At that time the limitations period began to run against the defendants who are the respondents in this appeal: the developer, architect, general contractor and the subcontractors. In a case involving defective construction, a cause of action accrues against the developer, architect and general contractor upon discovery of the defects. Simultaneously, the statute begins to run against the subcontractors as well; it is a plaintiff's tactical decision whether to join them or leave it to the named defendants to join them by third party complaint.

Greenbrier urges that its discovery of the defects does not rise to the level established in *Wittmer v. Ruegemer,* 402 N.W.2d 187 (Minn.Ct.App.1987), *pet. for rev. granted,* (Minn. May 20, 1987). We find *Wittmer* distinguishable. In that case the plaintiffs sued for negligence and breach of contract when they learned that their septic system was defective and needed to be replaced. The trial court granted summary judgment to defendants based on the two-year statute of limitations in section 541.051, subd. 1. This court reversed, holding that the trial court erred in finding the plaintiffs had discovered the damage in 1983 when they noticed standing water on the lawn. *Id.* at 189. We held that the plaintiffs had reasonably relied on the word of the sewer subcontractor, *who was also the city building inspector,* that the problem could be corrected with additional fill:

> [T]he young couple was hamstrung by *reliance on the city inspector, who had subcontracted to install their system.* Due to the *particular and peculiar circumstances* of this case we are reluctant to conclude the statute of limitations had run on the Wittmers' claims.

*Id.* at 190 (emphasis added). Those unique circumstances are not present here.

We hold that the trial court was correct in concluding that Greenbrier had discovered the defective workmanship more than two years before suit and that summary judgment for the defendants was therefore proper under Minn.Stat. § 541.051, subd. 1.

In its reply brief Greenbrier contends respondents are estopped to assert the statute of limitations because of repairs which led Greenbrier to believe its problems would be solved, citing *Bethesda Lutheran Church v. Twin City Construction Company,* 356 N.W.2d 344 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 5, 1985). We do not reach this issue because it was not raised before the trial court. *See Morton v. Board of Commissioners of Ramsey County,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974) (a party cannot raise a question for the first time on appeal).

## DECISION

The two-year statute of limitations in Minn.Stat. § 541.051 applies to actions for damages due to defective workmanship in improvements to real property. The trial court properly granted summary judgment based on documents showing that appellant discovered the defects more than two years before commencement of suit.

Affirmed.