SECURITY BANK & TRUST
COMPANY, Appellant,

v.

LARKIN, HOFFMAN, DALY
& LINDGREN, LTD.,
Respondent.

A16-1810

Court of Appeals of Minnesota.

Filed May 15, 2017

Paul A. Sortland, Sortland Law Office, PLLC, Minneapolis, Minnesota (for appellant).

Stephen M. Warner, Sally J. Ferguson, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for respondent).

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Worke, Judge.

## OPINION

JESSON, Judge

Appellant Security Bank & Trust, as trustee and personal representative for a decedent, challenges the district court's dismissal on the pleadings of its legal-

malpractice claim arising from estate planning services performed by respondent Larkin, Hoffman, Daly & Lindgren. We conclude that because some damage occurred before the decedent's death, when he signed the estate planning documents pursuant to the attorneys' advice, the cause of action accrued at that time. Thus, the bank, as personal representative, succeeded to the decedent's claim under Minnesota's survival statute, Minnesota Statutes section 524.3-703(c) (2016), and has standing to pursue this action. We therefore reverse and remand for further proceedings.

## FACTS

In 2009, decedent Gordon Savoie sought estate-planning assistance from respondent law firm Larkin, Hoffman, Daly & Lindgren. Larkin Hoffman attorneys drafted a revocable trust and will for Savoie, who signed those documents in September 2009. The will was structured so that when Savoie died, assets remaining after gifts and personal items would pass into the trust. The trust directed that approximately 45% of the undistributed estate be distributed to a beneficiary who was more than 37.5 years younger than Savoie. But neither the will nor the trust contained a provision for a generation-skipping trust or other mechanism for avoiding a generation-skipping tax.[1]

After Savoie's death, appellant Security Bank & Trust was appointed successor personal representative and successor trustee. In 2015, the bank, in those capacities, commenced a malpractice action against Larkin Hoffman. The bank's complaint alleged that because Larkin Hoff-

man failed to advise Savoie of the tax implications of a generation-skipping tax, he missed opportunities to provide for alternative estate dispositions to avoid the tax, such as using sophisticated estate planning techniques to reduce the size of his estate, or arranging a different tax-payment methodology to shift the burden of the generation-skipping tax. It alleged that, as a result of Larkin Hoffman's negligence, the estate had been required to pay approximately $1.654 million in generation-skipping transfer taxes.

Larkin Hoffman moved for judgment on the pleadings. The firm argued that, as personal representative of the estate, the bank lacked standing to pursue a malpractice action because no damages had occurred before Savoie's death, so that no cause of action for legal malpractice accrued during his lifetime, and therefore no cause of action existed to which the personal representative might succeed. Larkin Hoffman also argued that the bank, acting as trustee, lacked standing to sue because it had no attorney-client relationship with the firm.

After a hearing, the district court issued an order dismissing the matter on the pleadings. The district court concluded that the bank lacked standing to sue as personal representative because (1) any cause of action for malpractice based on the failure to advise Savoie about the possibility of a generation-skipping tax on his estate did not cause compensable damage before his death; so that (2) no malpractice action accrued before he died; and (3) a cause of action for legal malpractice that does not accrue before death does not survive. The district court also concluded

---

1. Generally, a generation-skipping transfer tax is imposed on transfers under a trust or similar arrangement in which there are beneficiaries in more than one generation below that of the trust grantor. *See* 26 U.S.C. § 2601

(2012). Persons who are not lineal descendants and are more than 37.5 years younger than the transferor are assigned to the second generation below the transferor. *See* 26 U.S.C. § 2651(d) (2012).

that the bank lacked standing as trustee to assert a malpractice action because it had no attorney-client relationship with Larkin Hoffman. This appeal follows.

## ISSUE

Did Security Bank as personal representative of the estate have standing to pursue this action under the survival statute because a claim for legal malpractice accrued before the decedent's death?

## ANALYSIS

■■■■ If the district court determines that a complaint fails to set forth a legally sufficient claim for relief, it must grant a motion for judgment on the pleadings. Minn. R. Civ. P. 12.03. "To withstand a motion for judgment on the pleadings, [a plaintiff] must state facts that, if proven, would support a colorable claim and entitle it to relief." *Midwest Pipe Insulation, Inc. v. MD Mech., Inc.*, 771 N.W.2d 28, 31 (Minn. 2009). On appeal from a judgment on the pleadings, this court considers only facts alleged in the complaint, accepting them as true and drawing all reasonable inferences in favor of the nonmoving party. *Hoffman v. N. States Power Co.*, 764 N.W.2d 34, 45 (Minn. 2009). We review de novo whether the complaint sets forth a legally sufficient claim for relief. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003).

■■■■ Security Bank challenges the district court's dismissal of the action on the pleadings based on its legal conclusion that the bank lacked standing to pursue this action, either as personal representative or trustee. A party has standing to bring an action if it suffers an injury-in-fact or if it is the beneficiary of express statutory authority granting standing. *Free Press v. Cnty. of Blue Earth*, 677 N.W.2d 471, 477 (Minn. App. 2004). In addressing this is-

sue, we first examine general Minnesota law on the survival of claims, including malpractice actions. We then address whether a claim for malpractice based on allegedly negligent estate planning accrues before the decedent's death, so that the bank has standing to assert this claim under the Minnesota survival statute.

Traditionally, at common law, the right to sue for personal injury ended when either party died. *Johnson v. Taylor*, 435 N.W.2d 127, 128 (Minn. App. 1989), *review denied* (Minn. Apr. 19, 1989). This reflected the medieval view of torts as a form of revenge that could not be continued on behalf of a victim or wrongdoer. *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 612 (Minn. 1988). But, by statute, Minnesota law eliminates any inequity to survivors by providing for the survival of actions that do not arise from injury to the person. *Id.*; *see* Minn. Stat. § 573.01 (2016). Under the survival statute, a cause of action arising out of injury to the person generally dies with that person, but all other causes of action specifically "survive to the personal representatives" of the decedent's estate. Minn. Stat. § 573.01.

Generally, under the Uniform Probate Code as adopted in Minnesota, the personal representative has standing to assert claims on behalf of the decedent's estate. *See* Minn. Stat. §§ 524.1-101 to 524.6-311 (2016). The relevant statute provides, "Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this state at death has the same standing to sue and be sued . . . as the decedent had immediately prior to death." Minn. Stat. § 524.3-703(c); *see also* Minn. Stat. § 524.3-715(22) (2016) (stating that a personal representative is authorized to prosecute or defend claims or proceedings in

any jurisdiction for protection of the estate and the personal representative).

■ Because a legal malpractice claim is an independent claim that arises from an attorney's alleged misconduct, it is not barred under the survival statute as an injury to the person of the decedent. *Taylor*, 435 N.W.2d at 129. Thus, under the survival statute, a personal representative may generally maintain a suit for legal malpractice against the decedent's lawyer. *Prof'l Fiduciary, Inc. v. Silverman*, 713 N.W.2d 67, 71 (Minn. App. 2006), *review denied* (Minn. July 19, 2006). "Generally, the personal representative stands in the shoes of the deceased client." 4 Ronald E. Mallen, *Legal Malpractice* § 36:9, at 1295 (2017). But if a client has no claim against an attorney for legal malpractice when the client is living, no cause of action exists to which a personal representative may succeed after the client's death under section 524.3-703(c).

■ This brings us to the pivotal question: did Savoie have a claim for legal malpractice against Larkin Hoffman while he was alive? Security Bank argues that a legal-malpractice claim accrued before Savoie's death and that as personal representative, it should be allowed to pursue that claim. We therefore examine Minnesota caselaw regarding the time for accrual of a claim based on malpractice. In so doing, we are mindful that "[a] cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011).[2]

■ As the Minnesota Supreme Court has noted, different jurisdictions have articulated three alternative thresholds for determining when a cause of action for malpractice accrues: (1) under the traditional "occurrence" rule, which assumes that nominal damages occur, the cause of action accrues, and the statute of limitations starts to run, at the time of the negligent act; (2) the "discovery" rule, under which the cause of action accrues when the plaintiff knew or should have known of the injury; and (3) the "damage" rule, under which the cause of action accrues "when 'some damage has occurred as a result of the alleged malpractice.'" *Antone v. Mirviss*, 720 N.W.2d 331, 335-36 (Minn. 2006) (quoting *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999)). Minnesota adheres to the rule requiring "some damage" to occur for a cause of action to accrue. *Id.* at 338. Stated another way, "the alleged negligence ... coupled with the alleged resulting damage is the gravamen in deciding the date upon which the cause of action at law herein accrues." *Dalton v. Dow Chem. Co.*, 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968). This rule avoids the potential pitfalls of the occurrence rule, which may encourage speculative litigation and involve wasteful economic behavior, and the discovery rule, which may open the door to open-ended liability. *Antone*, 720 N.W.2d at 335. We have noted, however, that "'[s]ome damage' is defined broadly, and the cause of action accrues on the occurrence of any compensable damage." *Veit v. ProSource Techs., Inc.*, 879 N.W.2d 8, 10 (Minn. App. 2016) (quotation omitted). Thus, the cause of action exists at this point "even though the ultimate damage is unknown or unpre-

---

**2.** The elements of a claim for legal malpractice are that an attorney-client relationship existed; that the defendant committed acts amounting to negligence or breach of contract; that those acts caused damages to the plaintiff; and, in transactional matters, that but for the attorney's actions, the plaintiff would have obtained a more favorable result. *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983).

dictable." *Dalton*, 280 Minn. at 154, 158 N.W.2d at 585 (quotation omitted).

The district court determined that on the facts as pleaded in the complaint, no compensable damage occurred before Savoie's death, so that the personal representative had no claim under the survival statute for negligent estate planning following his death. In so doing, it relied on *Antone*, 720 N.W.2d 331. In that case, a client brought a legal-malpractice action, alleging that his attorney improperly drafted an antenuptial agreement that failed to protect his interest in premarital property. *Antone*, 720 N.W.2d at 332-33. The supreme court upheld the district court's dismissal of the action on statute-of-limitations grounds, concluding that the client had suffered compensable damages at the time that he married and no longer had the legal right to protect his nonmarital property. *Id.* at 337-38. At that point, the client experienced consequences that were "immediate and irremediable." *Id.* at 337. The supreme court rejected the argument that the client's claim did not ripen until the marriage dissolved, stating that "the inability to calculate the precise damage ... does not preclude the running of the statute of limitations." *Id.* at 338 (citing *Herrmann*, 590 N.W.2d at 643)).

Here, we consider *Antone* together with other Minnesota appellate decisions concerning the time for accrual of an attorney-malpractice claim. In *Herrmann v. McMenomy & Severson*, the supreme court addressed the accrual of a claim for legal and accounting malpractice based on failure to warn of the illegality of transactions involving a trust. 590 N.W.2d at 641. The supreme court held that the malpractice claim accrued when the first illegal transaction occurred and the attorneys failed to advise that it was prohibited, so that the clients became liable for tax and interest as a result of the transaction. *Id.*

at 641-44. In so doing, the court noted that the running of the statute of limitations did not depend on the ability to ascertain an exact damages amount. *Id.* at 643 (citing *Dalton*, 280 Minn. at 154, 158 N.W.2d at 585).

This court reached the same conclusion on similar facts in *Grimm v. O'Connor*, 392 N.W.2d 40, 43 (Minn. App. 1986). In *Grimm*, this court held that an attorney-malpractice cause of action accrued when an attorney failed to inform his clients, real property sellers, that they were signing a new contract for deed that did not include a clause limiting their exposure to rising interest rates, when such a clause had been included in a previous contract for deed. *Grimm*, 392 N.W.2d at 43. We concluded that some damage occurred and the cause of action accrued when the document was signed, rather than at a later date when the sellers sought to refinance the property. *Id.* We noted that during a time of rising inflation, a contract for deed with an escalator clause has a greater value than one without such a clause. *Id.*

In *Antone*, *Herrmann*, and *Grimm*, the court concluded that "some damage" occurred, and the cause of action accrued, when the clients changed position to the detriment of their legal rights which exposed them to increased liability by following their attorneys' allegedly negligent advice. *See Antone*, 720 N.W.2d at 337-38 (stating that the client's "exposure [to liability] was an injury that resulted in some damage sufficient to survive a motion to dismiss"). Although the "ultimate damage" suffered by following that advice may have been "unknown or unpredictable," *Dalton*, 280 Minn. at 154, 158 N.W.2d at 585 (quotation omitted), uncertainty as to the amount of damages does not preclude a malpractice claim from accruing when the client signs a document exposing his property interest to increased liability. *See An-*

*tone*, 720 N.W.2d at 338, *Herrmann*, 590 N.W.2d at 643-44. The value of such an interest has thus decreased, based on the liability assumed. *See Grimm*, 392 N.W.2d at 43.

Similarly, in this case, we conclude that Savoie sustained "some damages" when he signed the will and trust after Larkin Hoffman attorneys allegedly failed to inform him that his estate would be subject to a generation-skipping tax and failed to provide him with alternatives for avoiding such a tax. *See Herrmann*, 590 N.W.2d at 643-44. This lawsuit alleges that when he signed those documents, he relied on his attorneys' allegedly negligent advice, so that his estate failed to protect against liability from a generation-skipping tax and became less valuable because of that liability. *See Grimm*, 392 N.W.2d at 43. We note that Savoie also incurred liability for attorney fees paid for services that, it may be argued, lessened the value of his estate. At this point, Savoie would have been able to assert a claim for legal malpractice, which would have survived a rule 12 motion to dismiss. *See Antone*, 720 N.W.2d at 335 (stating that a cause of action accrues "when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted").

 Larkin Hoffman argues that, unlike the client in *Antone*, Savoie did not incur damages before his death because he did not change his position "irremedi-abl[y]"; in short, he could have changed his will and trust at any time. *Antone*, 720 N.W.2d at 337. But while the supreme court in *Antone* explained that the client's loss of his right to unilaterally change position when he married resulted in "some damage," *see id.*, the supreme court did not hold that a loss of ability to unilaterally change position was the *only* possible triggering event for the cause of action

to accrue. In short, being "locked into" a position is evidence of "some damage," but it does not provide the only possible evidence of damage. The supreme court also emphasized the client's testimony that he relied on the attorney's advice, which caused him to do something that he would not otherwise have done and exposed himself to liability arising from that advice. *Id.* at 337-38. Under that same principle, Security Bank as personal representative has set forth a claim that Savoie acted on Larkin Hoffman's advice when he signed the estate documents and created a new exposure to liability for his estate.

 We conclude that because Savoie incurred "some damage" at the time that he signed the will and trust, he had a cause of action for legal malpractice that accrued at that time based on the advice given to him by his attorneys. And after his death, that cause of action survived to the personal representative of his estate by operation of the survival statute. *See* Minn. Stat. § 524.3-703(c). Therefore, Security Bank as personal representative had standing to assert a claim for legal malpractice based on allegedly negligent advice.

In reaching this conclusion, we note that different jurisdictions have addressed this issue with varying approaches. The Texas Supreme Court has held that no legal bar existed to prevent the personal representative of an estate from maintaining a legal-malpractice action against the decedent's estate planning attorneys. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780 (Tex. 2006); *see also Estate of Schneider v. Finmann*, 15 N.Y.3d 306, 907 N.Y.S.2d 119, 933 N.E.2d 718 (2010) (holding that the personal representative has sufficient privity with a decedent's attorney to maintain a legal-malpractice action for damages resulting from negligent estate planning, which allegedly caused en-

hanced estate-tax liability). On the other hand, the Virginia Supreme Court has held that a cause of action for estate-planning malpractice did not come into existence during the testator's lifetime because the alleged injury, increased taxation of the estate, arose only after her death. *Rutter v. Jones, Blechman, Woltz & Kelly, P.C.*, 264 Va. 310, 568 S.E.2d 693 (2002); *see also Jeanes v. Bank of Am., N.A.*, 296 Kan. 870, 295 P.3d 1045 (2013) (holding that a claim for legal malpractice based on negligent estate planning did not accrue until after the decedent's death). Our resolution of this issue is consistent with the majority viewpoint that the estate succeeds to the legal malpractice action of the deceased client. *See* Mallen, *supra*, § 36:9, at 1295.

 Although our decision rests on our analysis of *Antone*, *Herrmann*, and *Grimm*, we also note that if we held differently, certain harms caused by estate-planning malpractice would lack redress.[3] Our reading of Minnesota caselaw avoids this harsh result and affords a remedy when a deceased client has incurred damages based on alleged legal malpractice in estate planning.

Security Bank as personal representative succeeded to a claim for legal malpractice based on estate planning advice given to Savoie. Based on the allegations in the complaint, that claim is sufficient to survive a motion to dismiss on the pleadings, and the district court erred by granting judgment on the pleadings as to Security Bank's claim as personal representative. Because this claim implicates the same facts and circumstances as the claim asserted by the bank as trustee, we need not address the additional argument relating to the claim of standing made in its capacity as trustee.

## DECISION

Security Bank succeeded as personal representative to the legal-malpractice claim of Gordon Savoie, which accrued when he signed the will and trust documents on which the malpractice cause of action is based. Because Security Bank has standing to assert this claim as the personal representative of Savoie's estate, and the statute of limitations had not yet run on this claim when the case was initiated, the district court erred by granting judgment on the pleadings. We therefore reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**

---

3. We recognize that only in limited circumstances may a will or trust beneficiary assert a legal-malpractice action as a third-party beneficiary of estate planning services when that party does not have an attorney-client relationship with the attorney being sued. *Marker v. Greenberg*, 313 N.W.2d 4, 5 (Minn. 1981).