# United States Court of Appeals for the Federal Circuit

2007-1328, -1329, -1330, -1331, -1332, -1333, -1354, -1361

IN RE CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC, PATENT LITIGATION

----------------------------------------------------------------------------

CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC,

Plaintiff-Appellant,

v.

TELESYS COMMUNICATIONS, LLC,

Defendant-Appellee,

and

UNITED WORLD TELECOM, L.C.,

Defendant-Appellee,

and

WORLD LINK COMPANIES,

Defendant-Appellee,

and

A.M.S. VOICECOM, INC.,

Defendant-Appellee,

and

INTERACTIVE MEDIA TECHNOLOGIES, INC. (doing business as GlobalTel),

Defendant-Appellee,

and

VOICEWARE SYSTEMS CORPORATION, DIAL-THRU INTERNATIONAL, INTERNATIONAL TELECOM, LTD., KALLBACK, INC., and GLOBALPHONE CORP.,

Defendants-Appellees,

and

AMERICOM COMMUNICATIONS and AMERICOM, INC.,

Defendants-Appellees,

and

TELCAN INCORPORATION, ANDREW KAWESKI, MAXTEL COMMUNICATIONS, ALLIANCE CALLBACK COMMUNICATIONS, and ACCESS NETWORK SERVICES,

Defendants.

---------------------------------------------------------------------------------------------------------------

2008-1023

IN RE CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC, PATENT LITIGATION
------------------------------------------------------------------------------

CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC,

Plaintiff-Appellant,

v.

AT&T CORP.,

Defendants-Appellees.


John P. Sutton, of San Francisco, California, argued for plaintiff-appellant.

John C. Carey, Carey Rodriquez Greenberg & Paul, LLP, of Miami, Florida, and Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California, argued for all defendants-appellees.

Matthew F. McGahren, McGahren, Gaskill & York, LLC, of Norcross, Georgia, for defendant-appellee Telesys Communications, LLC. Of counsel was Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California.

John C. Carey, Carey Rodriquez Greenberg & Paul, LLP, of Miami, Florida, for defendant-appellee United World Telecom, L.C. Of counsel was Allison J. Cammack. Also of counsel was Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California.

Thomas T. Tamlyn, Jr., Yeskoo Hogan & Tamlyn, LLP, of New York, New York, for defendant-appellee World Link Companies. Of counsel was Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California.

Peter S. Canelias, of New York, New York, for defendant-appellee A.M.S. Voicecom, Inc.  Of counsel was Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California.

Kieran P. Fallon, Kieran P. Fallon, P.A., of Miami, Florida, for defendant-appellee Interactive  Media Technologies, Inc. (d/b/a GlobalTel).  Of counsel was Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California.

John F. Mardula, Roberts, Mardula & Wertheim, LLC, of Reston, Virginia, for defendants-appellees Voiceware Systems Corporation, et al.  Of counsel was Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California.

Jeffrey L. Silvestrini, Cohne Rappaport & Segal, P.C., of Salt Lake City, Utah, for defendants-appellees AmeriCom Communications, et al.  Of counsel was Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California.

Gregory B. Wood, Fulbright & Jaworski, L.L.P., of Los Angeles, California, argued for defendant-appellee AT&T Corp.  With him on the brief were Joseph P. Zammit, of New York, New York, and Jonathan S. Franklin, of Washington, DC.

Appealed from:  United States District Court for the Northern District of California

Judge Ronald M. Whyte

# United States Court of Appeals for the Federal Circuit

2007-1328, -1329, -1330, -1331, -1332, -1333, -1354, -1361

IN RE CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC, PATENT LITIGATION

------------------------------------------------------------------------------

CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC,

Plaintiff-Appellant,

v.

TELESYS COMMUNICATIONS, LLC,

Defendant-Appellee,

and

UNITED WORLD TELECOM, L.C.,

Defendant-Appellee,

and

WORLD LINK COMPANIES,

Defendant-Appellee,

and

A.M.S. VOICECOM, INC.,

Defendant-Appellee,

and

INTERACTIVE MEDIA TECHNOLOGIES, INC. (doing business as GlobalTel),

Defendant-Appellee,

and

VOICEWARE SYSTEMS CORPORATION, DIAL-THRU INTERNATIONAL,
INTERNATIONAL TELECOM, LTD., KALLBACK, INC.,
and GLOBALPHONE CORP.,

Defendants-Appellees,

and

AMERICOM COMMUNICATIONS and AMERICOM, INC.,

Defendants-Appellees,

and

TELCAN INCORPORATION, ANDREW KAWESKI, MAXTEL COMMUNICATIONS,
ALLIANCE CALLBACK COMMUNICATIONS, and ACCESS NETWORK SERVICES,

Defendants.


Appeal from the United States District Court for the Northern District of
California, in M:02-CV-01423, case nos. 03-CV-3378, 03-CV-03596, 03-CV-
4003, 03-CV-03594, 02-CV-00142, 02-CV-00145, and 04-CV-04359,
Judge Ronald M. Whyte.
-------------------------------------------------------------------------------------------------------------

2008-1023


IN RE CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC, PATENT
LITIGATION
-------------------------------------------------------------------------------


CYGNUS TELECOMMUNICATIONS TECHNOLOGY, LLC,

Plaintiff-Appellant,

v.

AT&T CORP.,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of California, in M:02-CV-01423, case no. 04-CV-4247, Judge Ronald M. Whyte.

_____

DECIDED: August 19, 2008

_____


Before NEWMAN and BRYSON, Circuit Judges, and POGUE, Judge.[*]

BRYSON, Circuit Judge.

Cygnus Telecommunications Technology, LLC, has filed two appeals from a final judgment in this multidistrict litigation proceeding. In the first, Cygnus has appealed from a judgment in favor of Telesys Communications, LLC, and seven other defendants (the "Telesys defendants"). In the second, Cygnus has appealed from a judgment in favor of defendant AT&T Corp. In both cases, Cygnus appeals from the district court's grant of summary judgment that U.S. patent numbers 5,883,964 and 6,035,027 are invalid under the on-sale bar of 35 U.S.C. § 102(b). In addition, in the case against AT&T, Cygnus appeals from the district court's summary judgment of noninfringement and the dismissal of Cygnus's trade secret misappropriation claims. We affirm the judgment in all respects in both appeals.

I

In the late 1980s, placing a telephone call from the United States to a foreign country was typically less expensive than placing the same call from the foreign country

_____

[*] The Honorable Donald C. Pogue, Judge, United States Court of International Trade, sitting by designation.

to the United States. In 1988, James Alleman founded Paragon Services International, Inc., and began to develop systems designed to take advantage of that cost differential. Mr. Alleman first attempted to do so through what he called the "black box" system. That system allowed a user in a foreign country to purchase a dedicated line that was attached to a "black box" in the United States. The foreign user would place a call on the dedicated line and then promptly terminate the call. The black box would then call the user back using the less expensive U.S. billing rate. The user would then dial the desired destination number, and the black box would place that call and bridge the two lines together. The effect was to allow a person overseas to initiate a call to the United States, but for the call to originate in the United States for billing purposes so as to take advantage of the lower U.S. billing rates. The problem with that system was that it was expensive to maintain, since it required a dedicated line for each foreign user.

Mr. Alleman subsequently developed a system to carry out the same process by using a computer rather than the black box. He created a prototype of the new system on a 386 computer ("the 386 system"). Instead of having a dedicated line for each user, the 386 system identified users by reference to the international telephone numbers from which they made their initial calls. Part of the user's telephone number would be passed along to the 386 system by the telephone company's local exchange carrier. The 386 system would use that information to search its database and identify the foreign user. The system would then terminate the call from the user and promptly call the user back. The user could subsequently enter the number of its desired destination call, and the 386 system would place that call from within the United States and bridge the two calls together.

Mr. Alleman asserts that in order to develop the software necessary for the 386 system, he worked with a computer engineer named Jim Gunther. Throughout the development process, Mr. Alleman also worked with several individuals overseas who first used the black box system and then used the 386 system. Mr. Alleman described two of those individuals, Theo Brenner and Fadi Ghandour, as "beta-testers" who helped him troubleshoot the 386 system. Those individuals were also regularly invoiced for the cost of their telephone calls. During that period, Mr. Alleman had discussions with another telecommunications company, Call Interactive, as to how they could implement and market his invention on a commercial scale.

Mr. Alleman filed a patent application for his computerized callback system on April 24, 1992. The application led to the issuance of U.S. Patent No. 5,883,964 ("the '964 patent") and its successor, U.S. Patent No. 6,035,027 ("the '027 patent"). Paragon's successor-in-interest, Cygnus, later brought infringement suits against the defendants-appellees alleging infringement of both patents. The various actions were ultimately transferred and consolidated into a single multidistrict proceeding before the United States District Court for the Northern District of California. On November 24, 2004, AT&T moved to dismiss Cygnus's trade secret misappropriation claim under Fed. R. Civ. P. 12, arguing that it was barred by the statute of limitations. After permitting Cygnus to amend its complaint, the district court granted AT&T's motion.

On October 27, 2006, AT&T filed a motion on behalf of all defendants for summary judgment of invalidity based on prior public use and commercial sales of the subject matter of the patents. Several of the defendants also filed motions for summary

07-1328, 08-1023                    3

judgment of noninfringement. The district court granted the invalidity and noninfringement motions and entered a final judgment on March 30, 2007.

II

On appeal, the defendants first assert that Cygnus is collaterally estopped from challenging the invalidity of the '964 and '027 patents under section 102(b) because it failed to appeal the district court's entry of final judgment against one defendant in the multidistrict litigation below. The defendant to which the appellees point is Heritage Communications Corp., which was granted summary judgment but which was not included in Cygnus's appeal.

It is a firmly established principle that a judgment of a patent invalidity in one case can collaterally estop the patent owner from contesting invalidity in a subsequent case, as long as the patent owner had a "full and fair opportunity to litigate the validity of the patent" in the first case. Miss. Chem. Corp. v. Swift Agric. Chems. Corp., 717 F.2d 1374, 1379 (Fed. Cir. 1983); see also Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 333 (1971). The defendants, however, seek to extend that principle to a setting in which it has no application.

Because the multiple actions filed against various defendants were all consolidated in a single MDL proceeding, we believe that for purposes of analysis of preclusion doctrines, the proceeding is most logically viewed as a single, multi-defendant lawsuit. From that perspective, the defendant's collateral estoppel argument, reduced to its essentials, is that if a court enters a judgment of patent invalidity against a patentee in a multi-defendant action, and the patentee appeals that judgment against fewer than all of the defendants, the appellees can invoke collateral estoppel based on

the final judgment in favor of the defendant as to whom the patentee did not appeal. As a result, the patentee's decision not to appeal against one defendant will mean that the patentee loses its right to an appellate decision on the merits against all of them.

The defendants cite no authority that stands for that proposition. The one case they cite, other than for broad general principles of collateral estoppel, is <u>Odetics, Inc. v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1275 (Fed. Cir. 1999). But the statement in that case that the defendants' "failure [in a previous appeal] to appeal the judgment of no invalidity precluded the continued litigation of that issue," was an application of the mandate rule, not collateral estoppel. The court held that the defendants' failure to raise that issue in a prior appeal against the same plaintiff barred it from raising the same issue in a later appeal; the court did not suggest that the failure to appeal as to one of several adverse parties would bar a party from appealing as to any of them.

The Supreme Court has described the doctrine of collateral estoppel as follows: "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979). That formulation does not apply here, as the appeal in this case is not a "subsequent suit based on a different cause of action" and does not arise from such a subsequent suit. See <u>In re Freeman</u>, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (judgment on the merits in a first suit precludes relitigation in a second suit of the issues actually litigated and determined in the first suit).

This case is effectively controlled by our prior decision in <u>Innovad Inc. v. Microsoft Corp.</u>, 260 F.3d 1326 (Fed. Cir. 2001), which held in a setting closely

analogous to this one that when plaintiff Innovad filed an appeal against all but one of the defendants in a patent infringement case, the judgment that was awarded to the defendant as to which no appeal was taken did not constitute the "first case" for collateral estoppel purposes. Accordingly, the court held, the decision as to that defendant did not qualify as "prior litigation" entitling the other defendants to deprive Innovad of the right to appeal. The court explained:

> By its terms, the doctrine of issue preclusion is not available at this stage of this adjudicative process. Moreover, for excellent policy reasons, the doctrine of issue preclusion does not require Innovad to include all parties involved below in its appeal, which would preclude the opportunity of settlement with any party before appeal. Innovad can preserve its full rights to appeal without including all parties to the district court's judgment.

Id. at 1334.

As the court stated in Innovad, there are strong policy reasons for not applying collateral estoppel in this context. To adopt the defendants' rule would promote judicial inefficiency and the waste of litigants' resources, as it would require appellants to prosecute appeals against every defendant in a multi-defendant case, even if there were strong practical or legal reasons for narrowing the scope of the appeal. At the same time, it would not serve the underlying purposes of the collateral estoppel doctrine, which are to give a party one full and fair opportunity to litigate a particular issue, while preventing needless relitigation of that issue. In a case such as this one, the plaintiff is not seeking to obtain a second bite at the apple on an issue decided against it in a previous case; rather, the plaintiff is seeking review of an adverse decision in the first and only case in which the issue has been presented. The fact that the plaintiff has elected not to pursue its appellate rights against all of the defendants

07-1328, 08-1023                                    6

should be no basis for holding that it may not pursue those rights against any of them. Accordingly, we decline to apply collateral estoppel against Cygnus.[1]

III

The district court ruled, on summary judgment, that the '964 and '027 patents are invalid under the on-sale bar of 35 U.S.C. § 102(b). The district court's ruling was based on Mr. Alleman's sale of the 386 system to paying users and the commercialization agreement that Paragon and Call Interactive entered into before the critical date for both patents, April 24, 1991. The district court determined that the 386 system had been reduced to practice based on Mr. Alleman's sworn declaration to the Patent and Trademark Office ("PTO") in which he stated, "I reduced to practice the invention of the claims before June 27, 1990." The court relied on that representation after concluding that Cygnus had presented no satisfactory explanation for why that statement should be disregarded. In addition, the court noted that the declaration contained facts sufficient to support that conclusion.

The district court also rejected Cygnus's argument that the use of the 386 system prior to the critical date fell within the "experimental use" exception to the public use or on-sale bar of section 102(b). In so ruling, the court relied on this court's decisions

---

[1] We recognize that the result would be different if the various actions had not been consolidated in an MDL proceeding and one of the actions had gone to judgment before the others, resulting in a judgment adverse to the plaintiff. In that setting, absent special circumstances, the plaintiff's failure to appeal the first judgment could result in the application of collateral estoppel against it in each of the other cases. See 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4433, at 71 (3d ed. 2002) ("preclusion cannot be defeated by electing to forgo an available opportunity to appeal"). However, that is not the case before us. Because the consolidated MDL proceeding was treated as a single multi-defendant action with respect to the common issues, we think it proper to treat it as a single action for purposes of the collateral estoppel analysis as well.

holding that the experimental use exception is not available after an invention has been reduced to practice.

Finally, the district court concluded that because Mr. Alleman had charged users of the 386 system for the calls they made using that system, he engaged in a "sale" of the service within the meaning of section 102(b) even if he did not make a profit on the transactions. For the reasons below, we affirm the district court's holding with respect to the 386 system. Accordingly, we do not need to reach the portion of the district court's opinion addressing the legal effect, for validity purposes, of the agreement between Paragon and Call Interactive.

A

As an initial matter, we note that on appeal Cygnus has cited various portions of the record below that were not presented to the district court in conjunction with the briefing on the section 102(b) summary judgment motion. Cygnus has not offered any explanation for its failure to bring the materials it now cites to the district court's attention in connection with the summary judgment motion. Instead, Cygnus takes the position that in challenging the summary judgment order entered by the district court, it is entitled to rely on any materials that were submitted to the district court for any purpose at any time during the course of the litigation. For example, many of the documents that Cygnus cites in its appellate briefs were submitted to the district court below for the first time on May 3, 2007, after the district court had issued its section 102(b) ruling two months earlier.

To justify relying on those other materials, including materials filed after the summary judgment decision, Cygnus points to a statement made by this court in an

order resolving a motion submitted by the Telesys defendants to strike portions of the joint appendix. The Telesys defendants had claimed that Cygnus had included in the joint appendix various materials that were not in the record below. This court denied that motion because the pertinent materials had been filed in the district court and thus were part of the "record on appeal" within the meaning of Rule 10 of the Federal Rules of Appellate Procedure. We explained that "[i]f a document was filed in the district court, it is part of the record on appeal even if the document was filed in connection with a particular legal issue." Cygnus's reliance on that statement is misplaced, however, because the statement pertained only to the proper scope of the record on appeal. It was not relevant to the question presented here, which is what part of the record on appeal was specifically presented to the district court in connection with a particular legal issue. That distinction is clearly illustrated by the facts of this case. The exhibits Cygnus cites from the May 3, 2007, filing are indisputably part of the record below and thus part of the record on appeal, but they were not presented to the district judge in connection with the section 102(b) summary judgment briefing. Indeed, it would have been physically impossible for the district court to consider, in connection with that order, those documents that it did not receive until several months after the order was entered.

In deciding procedural issues not affecting substantive patent law principles, such as issues relating to district court summary judgment procedures, we look to the law of the regional circuit where the case was tried. See Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352 (Fed. Cir. 2008); MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1349 (Fed. Cir. 2005). In this case the governing regional circuit law is

the law of the Ninth Circuit. With respect to the question before us—whether a party appealing from a summary judgment order may point to any evidence that was introduced in the proceedings before the district court, or is limited to the evidence submitted in connection with the summary judgment motion—the Ninth Circuit has law that is both clear and directly on point. In Carmen v. San Francisco Unified School District, 237 F.3d 1026 (9th Cir. 2001), the court rejected precisely the same argument that Cygnus is raising here. The court reaffirmed an earlier decision in which it had held that "even if an affidavit is on file, a district court need not consider it in opposition to summary judgment unless it is brought to the district court's attention in the opposition to summary judgment." Id. at 1029, citing Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409 (9th Cir. 1988). In an exceptionally perceptive and forceful passage that is worth quoting at some length because of its pertinence to this case, Judge Kleinfeld wrote the following for the court in Carmen to explain the sound reasons behind that rule:

> This case has a record of ordinary length, and was of ordinary duration, yet a judge would have to read several reams of paper, going back two years, to find the text establishing the genuine issue of fact, because it was not in the opposition to the summary judgment motion. A substantial number of cases have records that fill a drawer or two of a filing cabinet, and some big cases sometimes fill multiple five-drawer file cabinets in the clerks' offices. A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence. . . .
>
> The alternative, requiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair. The cases often refer to the unfairness to the district court, which is substantial, but hardly the full story. If a district court must examine reams or file cabinets full of paper looking for genuine issues of fact, as though the judge were the adverse party's lawyer, an enormous amount of time is taken away from other litigants. Other litigants could have that

07-1328, 08-1023                    10

judicial time, and get their cases resolved better and faster, if the district court could limit examination to the materials submitted in opposition to the summary judgment motion.

Requiring the district court to search the entire record for a genuine issue of fact, even though the adverse party does not set it out in the opposition papers, is also profoundly unfair to the movant. The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. The opposition sets it out, and then the movant has a fair chance in its reply papers to show why the respondent's evidence fails to establish a genuine issue of material fact. If the district court, or later this court, searches the whole record, in practical effect, the court becomes the lawyer for the respondent, performing the lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial. The movant is then denied a fair opportunity to address the matter in the reply papers.

237 F.3d at 1029-31. Accordingly, under the rule set forth by the Ninth Circuit in Carmen, in ruling on the section 102(b) summary judgment motion we will not consider any part of the record that was not presented to or cited to the district judge in connection with that motion, even if that evidence can be found somewhere in the voluminous materials that are part of the record on appeal.

B

A patent is invalid under the section 102(b) on-sale bar if, prior to the critical date, the invention was ready for patenting and was the subject of a commercial sale or offer for sale. Pfaff v. Wells Elec., Inc., 525 U.S. 55, 67 (1998). "An invention can be found to be 'ready for patenting' in at least the following ways: by proof that it was reduced to practice, or by proof that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1368 (Fed. Cir. 2007).

The district court held that the computerized callback system met the "ready for patenting" prong of the Pfaff test because, in his February 12, 1997, declaration that was submitted to the PTO in connection with his patent application (the "1997 Alleman declaration"), Mr. Alleman admitted that his invention was reduced to practice before June 27, 1990. On appeal, Cygnus argues that it should not be bound by Mr. Alleman's sworn statements, for several reasons. First, Cygnus contends that because the PTO did not ultimately rely on that declaration to issue the patents, Cygnus should not be bound by Mr. Alleman's claim that the reduction to practice occurred before June 27, 1990. Second, Cygnus argues that the declaration does not support a reduction to practice before June 27, 1990, because the declaration suffered from "internal inconsistencies." Finally, Cygnus argues that the district court should have credited statements Mr. Alleman submitted to the PTO in 1994 (the "1994 Alleman declaration") and in his 2006 deposition, in which he explained why the statements he made in the 1997 declaration were mistaken. Further issues of material fact are purportedly raised by Jim Gunther's 1999 declaration to the PTO and the deposition testimony of Thomas D. Thompson.

Although Cygnus attempts to create an issue of material fact by citing to these various sources, almost none of them were submitted to the district court in connection with the section 102(b) summary judgment motion. In response to the motion, Cygnus filed a declaration of Mr. Alleman that is dated October 31, 2007 (but presumably was meant to be dated October 31, 2006), and several exhibits attached to that motion. Those exhibits included portions of an invoice from Dialogic Corporation and a letter

from Call Interactive dated March 6, 1991. On the defendants' motion, the district court struck portions of the declaration from the record.

Only a few of the documents that Cygnus relies on for purposes of this appeal were before the district court when the summary judgment motion was being litigated. The documents that Cygnus refers to in its brief that were before the district court include the March 5, 1990, invoice, one page from the deposition of Thomas D. Thompson, and six pages from Mr. Alleman's 2006 deposition. Cygnus cites the invoice to demonstrate than an order for Dialogic boards, which Mr. Alleman hoped to use in a computerized callback system, was placed on March 5, 1990. That assertion, however, does not call into question Mr. Alleman's statement that the invention was reduced to practice several months later, in June 1990. The cited portion of Mr. Thompson's deposition testimony contains no discussion of dates and therefore also does not call into question Mr. Alleman's statements. The five pages of Mr. Alleman's 2006 deposition testimony (pages 148, 173, 181, and 197-98) were submitted by AT&T, not Cygnus, and nothing in those five pages creates a disputed issue of material fact.[2] Pages 148 and 173 do not mention any dates and therefore do not contradict Mr. Alleman's sworn statement on reduction to practice. On page 181, Mr. Alleman discusses the use of the 386 system by Mr. Brenner and Mr. Ghandour and their conversion to the Call Interactive system after April 25, 1991. That discussion does not

---

[2]    The following pages of Mr. Alleman's 2006 deposition were cited in conjunction with the section 102(b) motion in the district court: pages 32-33, 39-40, 52, 54-56, 68, 79, 91-122, 140, 145, 148, 173-74, 180-81, 197-98, 200, and 203-04. In its opening brief against AT&T, Cygnus cites pages 62-63, 148-50, 154, 156, 164, 172, 181, 192-94, 198-99, 201-02, and 238. In its opening brief against the Telesys defendants, Cygnus cites pages 74-75, 83, 141, 148-50, 154-56, 164, 171-73, 183, 191-92, 194, 197-202, 235, and 238. Thus, the only pages that Cygnus relies on that were before the district court are deposition pages 148, 173, 181, and 197-98.

call into question whether the 386 system constituted a reduction to practice. Most crucially, in the last of those pages, Mr. Alleman admits that before June 27, 1990, he "had built a system that the idea would work, but not necessarily commercially," thereby confirming the statement made in the 1997 Alleman declaration that his invention was reduced to practice.

Accordingly, we agree with the district court that Cygnus is bound by the statements that Mr. Alleman made in his declaration to the PTO, regardless of whether the declaration was necessary for the issuance of the patent. Cygnus simply failed to offer sufficient evidence before the district court to undermine the force of his sworn admission regarding the date that he reduced his invention to practice. As the Supreme Court explained in <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 807 (1999), "The lower courts . . . have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." The Court added that although most of the cited lower court cases involved factual contradictions, "we believe that a similar insistence upon explanation is warranted here, where the conflict involves a legal conclusion." <u>Id.</u>

In his 1997 declaration, Mr. Alleman both directly stated that the invention was reduced to practice by June 27, 1990, and provided facts sufficient to support that conclusion. Any alleged internal inconsistencies in those documents were the responsibility of Cygnus, as the applicant, and do not provide an excuse for Cygnus to disavow the clear statements by the inventor regarding the date of reduction to practice.

On appeal, Cygnus does not rely on Mr. Alleman's October 31, 2006, declaration to support any substantive argument challenging the district court's summary judgment of invalidity. In any event, however, that declaration does not undermine Mr. Alleman's earlier admissions, as it consists mainly of (1) his contention that the 386 system was not the claimed invention because it "would not scale for commercial use," and (2) his denial that the 386 system was "on sale" (because he viewed Ghandour and Brenner as "beta testers").

With respect to the argument that the 386 system was not ready for patenting because the 386 system would not work on a commercial scale, the district court correctly ruled that the question whether the 386 system would work on a commercial scale is distinct from whether the system embodied the claims in the two patents at issue. See Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1352 (Fed. Cir. 2002) ("to invalidate a claim . . . [defendant] must show that the Red Rider embodied all of the limitations of that claim or would have rendered that claim obvious."). The 386 system was a functional computerized callback device as of June 1990, by Mr. Alleman's own admission in the 1997 Alleman declaration. Because the 386 system embodied the claims, sales relating to its use can constitute an invalidating commercial sale, regardless of the state of development of the larger Call Interactive system. For all these reasons, we affirm the district court's ruling that the invention met Pfaff's "ready for patenting" prong.

With respect to the argument that Mr. Brenner and Mr. Ghandour were merely "beta testers," the district court properly concluded that in light of the undisputed evidence that they paid to use the 386 system, there was a sale of the service. On

appeal, Cygnus contends that it is a disputed question of material fact whether Brenner and Ghandour were "paying customers." Because the two of them were never deposed, Cygnus argues that the district court must have drawn inferences in favor of the defendants in order to rule in their favor, thereby contravening the summary judgment standard established in <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970). However, Cygnus's characterization of the district court's ruling is inaccurate: the district court based its findings on statements from Mr. Alleman's 2006 deposition, including admissions that Mr. Alleman charged users "on a per minute basis" and that he billed them each month for the calls they made. In light of those admissions, the district court did not need to draw inferences in the defendants' favor to grant summary judgment, particularly in the absence of any suggestion by Cygnus that Mr. Alleman's testimony was false. As the district court noted, there did not need to be a profit in order for there to be a sale within the meaning of section 102(b). <u>C.R. Bard, Inc. v. M3 Sys., Inc.</u>, 157 F.3d 1340, 1381 (Fed. Cir. 1998); <u>U.S. Envtl. Prods. Inc. v. Westall</u>, 911 F.2d 713, 717 (Fed. Cir. 1990) ("a patent owner may have created an on-sale bar despite <u>losing</u> money on a sale.") (emphasis in original).

Although Cygnus relies on <u>Adickes</u> to suggest that defendants-appellees needed to disprove that Brenner and Ghandour were beta testers, more recent Supreme Court cases regarding the summary judgment standard make clear that <u>Adickes</u> does not support Cygnus's position here. Rather, AT&T has properly established a sale by relying on the Alleman testimony. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (moving party must "make a showing sufficient to establish the existence of an element essential to that party's case"); <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1219 (9th Cir.

2007) (discussing Celotex and noting that "[a] district court does not have a duty to search for evidence that would create a factual dispute"); Bio Tech. Gen. Corp. v. Duramed Pharms., Inc., 325 F.3d 1356, 1361 (Fed. Cir. 2003) (evidence sufficient to establish essential element entitles moving party with burden of proof to summary judgment in absence of any showing to the contrary); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727 (3d ed. 2003). The burden of production therefore fell on Cygnus to set forth specific facts to show that there was a genuine issue of material fact in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) ("Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'") (internal footnote omitted). Cygnus, however, provided no evidence below, and points to no sufficient reason on appeal, for why the deposition testimony of its own inventor should be disregarded.

Cygnus also argues that Brenner and Ghandour's use of the 386 system did not involve a commercial sale because their use of the system was part of Mr. Alleman's experimentation and thus was excluded from commercial use by the experimental use doctrine. Cygnus claims that it was necessary to have Brenner and Ghandour call from abroad to test the system's functionality and troubleshoot any problems. The district court ruled that the experimental use doctrine did not apply after June 27, 1990, because the invention had been reduced to practice. We affirm the district court's ruling based on this court's law that "experimental use cannot occur after a reduction to practice." Cont'l Plastic Containers v. Owens Brockway Plastic Prods., Inc., 141 F.3d 1073, 1079 (Fed. Cir. 1998) ("The policy behind experimental use negation is to give the

inventor an opportunity to reduce the invention to practice"); see also New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1297 (Fed. Cir. 2002) ("Once an inventor realizes that the invention as later claimed indeed works for its intended purpose, further 'experimentation' may constitute a barring public use.").

Cygnus also argues that as "a matter of fact and a matter of law," the district court's statement regarding public use in footnote 15 of the court's opinion "compels reversal of the on-sale bar." In that footnote, the district court stated: "This court does not reach defendants' argument that Mr. Alleman's activity in providing service to individuals according to the method and system claimed in the patents-in-suit using his 386 system was public use of the claimed invention." Cygnus relies on that statement to argue that because the district court found no public use prior to the critical date, there could not have been any invalidating commercial use. Cygnus's argument, however, relies on a misreading of the district court's statement, which plainly indicates that it made no findings at all with respect to public use. Even if it had, there would be no necessary effect on the commercial use ruling. Accordingly, we hold that footnote 15 does not require reversal. The defendants also urge affirmance of the district court's holding of invalidity on the alternative ground of public use. Given our holding on commercial use, however, we do not need to reach that issue.

We also do not need to reach the district court's rulings of noninfringement with respect to certain of the defendants. In any event, we note that in its opening brief in the Telesys appeal, Cygnus did not explicitly present any argument for why the

summary judgment of noninfringement should be reversed. Hence, any such arguments have been waived.[3]

IV

In addition to the issues common to both appeals, Cygnus raises in its appeal against AT&T the district court's dismissal of its trade secret misappropriation claims on statute of limitations grounds. In its second amended complaint, Cygnus claimed that during negotiations with AT&T in the mid-1990s, it had given AT&T access to its computerized callback technology, including the patent applications that issued as the patents-in-suit. Although AT&T ultimately declined to enter into a business relationship with Cygnus, it launched its own computerized callback service in 1996. Cygnus alleges that AT&T's service used Cygnus's technology.

The district court dismissed Cygnus's complaint as time-barred under the three-year statute of limitations for trade secret misappropriation under Minnesota state law. Minn. Stat. § 325C.06. Under Minnesota law, the statute of limitations begins to run once a lawsuit could survive a motion to dismiss for failure to state a claim. Hermann v. McMenomy & Severson, 590 N.W.2d 641, 643 (Minn. 1999). The district court found that the allegations in Cygnus's second amended complaint demonstrated that Cygnus was in possession of sufficient facts to state a claim for trade secret misappropriation as of August 30, 1996. Specifically, the district court relied on the complaint's allegations that AT&T publicly announced its plan to launch a callback service on August 30, 1996,

---

[3]     The district court entered summary judgment of noninfringement with respect to only some of the Telesys defendants: United World Telecom, World Link, Inc., Americom, and A.M.S. Voicecom, Inc.

and that AT&T had acknowledged receipt of Cygnus's callback patent applications, providing Cygnus with notice that AT&T had access to its trade secrets.

Cygnus argues on appeal, as it did before the district court, that the statute of limitations should not have started running until 2005, when AT&T's counsel allegedly admitted during an in-court argument that AT&T used Cygnus's technology in its 1996 callback services. Cygnus claims that it had no reason to suspect misappropriation by AT&T before that time, particularly because the negotiations between the two companies had led Cygnus to believe that AT&T would pay a royalty if it decided to use Cygnus's technology. Cygnus also argues that before the 2005 admission, it had no means of knowing whether AT&T was using the precise callback technology encompassed by its patents, or some variant of that technology.

We affirm the district court's ruling. Between knowing that AT&T had access to Cygnus's proprietary callback technology and knowing of AT&T's launch of its callback services, Cygnus had possession of sufficient facts to allege trade secret misappropriation, and that is all that Minnesota law requires. See Dalton v. Dow Chem. Co., 158 N.W.2d 580, 584 (Minn. 1968) ("The period within which the action must be brought commences when the right of action accrues.").

Cygnus also argues that AT&T fraudulently concealed its interest in Cygnus's callback technology, and that the statute of limitations should therefore be tolled. Although that argument was not made below, it would not merit reversal of the district court's decision in any event. The district court's ruling was based on its conclusion that Cygnus had enough information as of 1996 to file a trade secret misappropriation suit

against AT&T. Given Cygnus's possession of sufficient facts to state a claim, it is irrelevant whether AT&T may have concealed anything else.

Finally, Cygnus alleges that AT&T is liable for a breach of promise to pay commissions for its use of callback technology. That claim was not pleaded or presented to the district court below. Accordingly, we do not consider it for the first time on appeal.

V

Apart from the merits of the appeal, Cygnus and defendant AT&T have submitted detailed motions to this court regarding the contents of the joint appendix and the costs associated with the production of the appendix. Cygnus moved to assess costs for being forced to include improper materials in the appendix, and AT&T moved to strike portions of the joint appendix and Cygnus's reply brief. For the following reasons, both parties' motions are denied.

A

Cygnus moved to assess costs against AT&T for preparing parts of the appendix that were allegedly "prohibited." Federal Circuit Rule 30(a)(2)(D) provides: "If the appellant considers that parts of the record have been referenced in violation of this rule, the appellant may so advise the appellee and the appellee must advance the costs of including those parts in the appendix." Cygnus contends that AT&T designated a total of 954 unnecessary pages for the appendix, which entitles Cygnus to compensation in the amount of $958.27.

Cygnus first objects to AT&T's inclusion of the briefs underlying the district court's order to dismiss Cygnus's trade secret misappropriation claims under Rule 12 of

the Federal Rules of Civil Procedure. Cygnus acknowledges that in an appeal from the grant of summary judgment, the Federal Circuit Rules permit the inclusion in the appendix of the summary judgment briefing in its entirety. Fed. Cir. R. 30(a)(2)(F)(iii). Cygnus contends, however, that there is no justification for including all of the Rule 12 briefing, especially given that the district court expressly declined to convert the motion into one for summary judgment. While Federal Circuit Rule 30 expressly refers only to summary judgment, it is relevant by analogy to the inclusion of the briefing on a motion to dismiss where the propriety of a dismissal order is at issue on appeal. Counsel should use their considered judgment in determining whether inclusion of such briefing is always necessary, particularly where the briefing is lengthy or many of the issues below are not raised on appeal. However, Cygnus has not presented any such arguments for why inclusion of the particular briefing at issue in this case was wasteful. Accordingly, we decline to find that the inclusion of that material was improper.

Cygnus also objects to AT&T's alleged duplication of materials already present in the portion of the appendix that Cygnus designated. In particular, Cygnus objects to AT&T's duplication of parts of Defendants' Joint Motion for Summary Judgment for Invalidity under 35 U.S.C. § 102(b), the associated declaration, and some of the exhibits. AT&T responded by explaining that its version included the table of contents and two exhibits that were omitted from Cygnus's version. Although duplication in the appendix should generally be avoided, AT&T explains that inclusion of all the summary judgment briefing and associated declarations in one distinct part of the appendix was pertinent to support one of AT&T's primary arguments on appeal, namely that Cygnus cited to parts of the record below that were not before the district court in the section

102(b) summary judgment briefing. Cygnus objects to that justification and argues, as it did on the merits, that it was entitled to cite anything in the record on appeal to make its case for overturning the section 102(b) summary judgment ruling. As we explained earlier, that argument is incorrect. Hence, AT&T's proffered reason for including the material at issue has merit, and we do not find it appropriate to assess costs in connection with that material.

Although Cygnus does not present additional argument in its opening motion on the remainder of the allegedly improper 954 pages, it appears to have incorporated by reference arguments it made in an email exchange with AT&T. In that exchange, Cygnus objected to the inclusion of the section 102(b) summary judgment briefing. Again citing Federal Circuit Rule 30(a)(2)(F)(iii), Cygnus argues that the rule allows the inclusion of the full summary judgment briefing only where summary judgment is the "sole" issue on appeal. Because other issues were appealed, Cygnus argues that including the full briefing was not proper. As noted, however, nothing in the cited rule prohibits the inclusion of the full summary judgment briefing in other instances when it is relevant to the issues raised on appeal. In this case, where it was important for the court to examine precisely what was submitted to the district court in connection with the summary judgment motion, the inclusion of the associated briefing was appropriate. Accordingly, Cygnus's objections with respect to AT&T's index numbers 291, 304, 309, 400, 409, 423, 113, 657, 664, 741, 679, 709, and 725 on this basis are unfounded and no costs will be assessed relating to those materials.

In the email exchange, Cygnus also alleged a series of other duplications, including AT&T's index numbers 182, 530, 679, 725, and 741. The materials

corresponding to AT&T's index number 679 were subsequently deleted from Cygnus's portion of the appendix. The remaining duplications total 35 pages. That amount of duplication, while not to be encouraged, is de minimis and does not warrant assessing costs.[4] An additional index number that was allegedly duplicated, index number 735, was not included in AT&T's final index and will therefore be disregarded.

In the email exchange, Cygnus further contended that several of AT&T's appendix materials were barred from inclusion by Federal Circuit Rule 30(a)(2)(E)(i), which provides that "briefs and memoranda in their entirety" should not be included in the joint appendix "except by leave of the court" or as "otherwise provided in Federal Circuit Rule 30." The index numbers that Cygnus has listed, however, are not briefs or memoranda.[5] Because those pages are not precluded by Rule 30(a)(2)(E)(i) and because Cygnus makes no additional arguments for why those pages were improper, we find that the materials were properly included and that AT&T should not be assessed costs in connection with the inclusion of those pages.

Finally, the email exchange suggested that Cygnus contested the inclusion of any materials from the consolidated multidistrict litigation in the joint appendix on the ground that the instant appeal pertains to AT&T alone. In particular, Cygnus objected to

---

[4] In the email exchange, AT&T also claimed, by way of explaining why some of the duplication may have occurred, that it was not provided with a clear index of what materials Cygnus had already included in the index.

[5] The relevant AT&T index numbers are numbers 115 (Declaration of Gregory Wood, dated Sept. 29, 2006); 352 (Order Granting Defendant's Motion for Partial Summary Judgment on the Pleadings, dated Feb. 10, 2005); 384 (Second Amended Complaint, dated March 14, 2005); 401 (Declaration of Gregory Wood, dated April 4, 2005); 530 (Order Granting Defendant's Second Motion for Judgment, dated November 29, 2005); 681 (Declaration of Gregory Wood, dated Oct. 27, 2006); 746 (Objections and Request to Strike Declaration of James Alleman).

the inclusion of the docket report from the multidistrict litigation and a three-page order in the multidistrict litigation. However, the issues presented by Cygnus in its opening brief pertain to events that occurred in the multidistrict litigation, particularly the summary judgment of invalidity under section 102(b). Hence, the inclusion of materials from the multidistrict litigation is entirely appropriate. Indeed, Federal Circuit Rule 30(a)(2)(A)(i) requires inclusion of those docket sheets. No costs will be assessed for those pages.

We note that Cygnus cites to Federal Circuit Rule 30(a)(2)(D) for the proposition that AT&T should have advanced Cygnus the costs based on Cygnus's representation that AT&T's materials were improper. The rule does provide for the immediate transfer of funds, but because Cygnus would now have to return the $958.27 in costs, any argument on that ground is moot.

B

AT&T moved to strike portions of the appendix and of several sentences from Cygnus's reply brief. AT&T lists seven sections of the appendix—index numbers 23, 25, 111, and 112—that it contends were not a part of the record below.[6] AT&T also argues that two items—index numbers 35 and 37—were not before the district court in connection with any of the issues raised on appeal. The record on appeal includes "the original papers and exhibits filed in the district court." Fed. R. App. P. 10(a). Consequently, because AT&T essentially admits that items 35 and 37 were filed in the court below, AT&T's motion with respect to those items is denied.

---

[6] AT&T initially requested striking index number 34, but it withdrew that motion in its reply brief.

In its opposition, Cygnus claimed that the remaining items had been submitted at various times to the district court. Cygnus argued that index number 23, the 1994 Alleman declaration, was attached as an exhibit to Mr. Alleman's deposition, but Cygnus provides no indication of whether the declaration was submitted to the district court in connection with any filings. Because this court did not consider the 1994 Alleman declaration in conjunction with any of the legal issues raised on this appeal, the motion to strike is deemed moot.

Cygnus argues that index numbers 25, 111, and 112 were submitted to the district court in conjunction with a filing on May 4, 2007. After supplemental briefing, this court is satisfied that those three documents were included as attachments to that filing. The motion to strike them is therefore denied. As we noted earlier, however, those documents were presented to the district court after all the briefing on the appealed issues was complete. Therefore, while the documents are part of the record, this court has not considered them in conjunction with any of the appealed issues.

Finally, AT&T has moved to strike various portions of Cygnus's reply brief that make accusations against AT&T and its counsel, such as "AT&T is not telling the truth," "AT&T lied to the court . . . It was a lie to state that the 386 system was commercially used," and "AT&T suborned false testimony, a crime. The case should be remanded to the district court to refer the crime to the appropriate authorities for investigation." This court does not condone ad hominem attacks. Typically, however, such attacks do more harm than good to the party that launches them. At this point, because we see no useful purpose that would be served by taking a black marker to a few lines from the appellant's reply brief, we deny the motion.

Each party shall bear its own costs for this appeal.

<u>AFFIRMED</u>.
