NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HOMELAND HOUSEWARES, LLC,**

*Plaintiff/Counterclaim Defendant-Cross Appellant,*

AND

**HASTIE2MARKET, LLC, C-SQUARED TV, INC., INFOMERCIAL CONSULTING CORPORATION, BRENTWOOD CORPORATE SERVICES, INC., BABY BULLET, LLC, CAPITAL BRANDS, LLC,** AND **DOES 1-10,**

*Counterclaim Defendants,*

**v.**

**SORENSEN RESEARCH AND DEVELOPMENT TRUST,**

*Defendant/Counterclaimant-Appellant.*

---

2013-1345, -1383

---

Appeals from the United States District Court for the Central District of California in No. 11-CV-3720, Judge George H. Wu.

---

Decided: September 8, 2014

---

R. JOSEPH TROJAN, Trojan Law Offices, of Beverly Hills, California, argued for plaintiff/counterclaim defendant-cross appellant. With him on the brief was DYLAN C. DANG.

PATRICIA A. SHACKELFORD, Law Office of Patricia A. Shackelford, of Encinitas, California, argued for defendant/counterclaimant-appellant. With her on the brief was CHRISTIAN FENTON, Law Office of Christian Fenton, of San Diego, California.

_____

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Declaratory judgment defendant Sorensen Research and Development Trust ("Sorensen") appeals from the decision of the United States District Court for the Central District of California granting the plaintiff Homeland Housewares, LLC ("Homeland") summary judgment of noninfringement of U.S. Patent No. 6,599,460 ("the '460 patent"). Homeland has conditionally cross-appealed from the district court's decision granting Sorensen summary judgment of validity and denying Homeland's motion for summary judgment of invalidity of the '460 patent. We affirm summary judgment of noninfringement and do not reach the invalidity cross-appeal.

I

The '460 patent recites a method for manufacturing "thin wall" plastic products by injection molding. Injection molding is a process in which molten plastic is injected under pressure into a mold shaped in the form of the desired final product, such as a plastic cup.

Using injection molding to manufacture plastic products with thin walls can pose difficulties, because molten plastic cools and solidifies rapidly upon contact with a

mold. In a thin-wall mold, cooling plastic may solidify and fill the parts of the mold near where the molten plastic is injected (referred to as the "injection gate"), blocking the further flow of plastic before the mold is filled. One solution to that problem, well known in the art of injection molding, is to use "flow chambers," also known as "flow leaders." Flow chambers are portions of a plastic mold that are relatively thick compared to adjacent thin-wall sections. Because the flow chambers are thicker, they do not fill with solidified plastic before the molten plastic has filled the entire mold. Flow chambers can therefore be used to direct molten plastic into adjacent thin-wall portions of the mold that are relatively far from the injection gate and that might otherwise have been blocked off from the flow of molten plastic.

Under some circumstances, using injection molding to manufacture thin-wall plastic products can result in undesirable "gaseous voids" in the thin-wall portions of the final product. Such voids can result in gaps in the plastic walls, discoloration, or areas of reduced wall strength.

Jens Ole Sorensen and Paul Brown—the named inventors of the '460 patent—sought to solve the problem of gaseous voids in plastic products having thin walls that increase in thickness in the direction that the plastic flows in the mold during manufacturing. They discovered that they could eliminate the risk of gaseous voids in such products by ensuring that the wall thickness increased at less than a "threshold rate." They did not discover how to calculate the threshold rate for any given mold under any given set of injection parameters. Instead, they discovered only that there is such a threshold rate, which they defined, with some circularity, as the rate below which gaseous voids are not observed for any given injection-molding process.

Claim 1 is the primary independent claim in the '460 patent and is representative of the claims on appeal. The portions of claim 1 relevant to this appeal read as follows:

> A method of injection-molding a product that includes at least one thin wall, comprising the steps of:
>
> > (a) combining a plurality of mold parts to define a mold cavity for forming the product and at least one gate from which fluid plastic material may be injected into the mold cavity, wherein the mold cavity includes at least one thin-wall cavity section and *at least two opposed flow chambers* that adjoin opposite edges of the thin-wall cavity section *for directing injected fluid plastic material . . . into . . . the at least one thin-wall cavity section . . .*
> >
> > ***
>
> wherein . . . *the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers . . . at less than a threshold rate . . . .*

'460 patent, col. 7, ll. 5-33 (emphases added).

II

Homeland manufactures the Magic Bullet and Baby Bullet food blender systems. Those products are sold with an assortment of plastic cups and mugs that fit directly onto the blender. Homeland uses a plastic injection molding process to manufacture the cups that are sold with the blenders. In that process, plastic is injected through an injection gate located at the part of the mold that forms the closed, bottom portion of the cup. The mold is shaped so that the completed cups have ribs that run lengthwise along the insides of the cups and that are slightly thicker than the adjoining plastic cup walls.

In March 2011 Sorensen sent a cease-and-desist letter to Homeland accusing certain of Homeland's plastic cups of infringing the '460 patent. The following month, Homeland filed suit seeking a declaratory judgment that its cup-manufacturing process did not infringe the '460 patent and that the patent was invalid and unenforceable. Sorensen filed a counterclaim alleging infringement of the manufacturing process used to make three of Homeland's cups: the Magic Bullet Short Cup, the Baby Bullet Storage Cup, and the Baby Bullet Short Cup.

After the district court issued a claim construction ruling and substantial discovery had been completed, Homeland moved for summary judgment of noninfringement. The district court granted Homeland's motion on three primary grounds. First, the court found that Sorensen had no evidence to support its contention that the portions of the molds that formed the ribs along the cup walls were "flow chambers" that directed plastic into the allegedly thin-wall portions of the mold.

Second, the court found that Sorensen had not pointed to any evidence that the thickness of the walls of the accused cups increased at less than a threshold rate because there was no admissible evidence that the walls increased in thickness at all. The court ruled that three drawings submitted by Sorensen that depicted measurements of wall thickness increasing in the direction of flow for each accused cup were unauthenticated and therefore inadmissible.

Finally, the district court determined that there was no evidence that Homeland's accused manufacturing processes met the "threshold rate" limitation. The court had construed "threshold rate" to mean "the rate of increase in the thickness of the thin wall section as empirically determined by conducting test strips at the time the mold is made in order to prevent gaseous voids." Because there was no evidence that Homeland had ever performed

empirical testing to determine a "threshold rate," the court found that there was no infringement under the court's construction of that term.

After the entry of summary judgment of noninfringement, Homeland continued to prosecute its claim that the '460 patent was invalid for obviousness and for indefiniteness of the claim term "threshold rate." The district court subsequently denied Homeland's motion for summary judgment of invalidity and granted Sorensen's cross-motion, holding that Homeland had presented insufficient evidence to create a genuine dispute of fact over the validity of the patent.

Sorensen subsequently took this appeal from the district court's noninfringement ruling and the district court's construction of the term "threshold rate." Homeland cross-appealed from the district court's ruling on validity. During oral argument, Homeland clarified that its cross-appeal was conditional and that it was asking us to reach the question of validity only if we reversed the district court's claim construction.

## III

1. Sorensen argues that the district court erred in holding that it had presented no admissible evidence to establish that the walls of the accused cups increase in thickness, as required by the '460 patent. Sorensen points to three drawings offered through the declaration of Mr. Sorensen, one of the named inventors of the patent. Those drawings depict measurements of wall thickness that increase along the direction of plastic flow in a discrete "accused zone" of each accused cup. According to Sorensen, the measurements depicted in its drawings contradicted measurements offered by Homeland and thereby created a factual dispute over whether the accused products had walls of increasing thickness. Sorensen asserts that the district court erred when it

found that the three drawings were inadmissible because they had not been authenticated.

A careful review of the record in this case reveals that Sorensen did not present the district court with sufficient evidence from which a reasonable finder of fact could conclude that the measurements depicted in the three drawing were authentic. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). In his declaration, Mr. Sorensen testified that the drawings were "based upon [Mr. Brown's and Mr. Sorensen's] physical examination of actual product samples." Mr. Sorensen, however, acknowledged that he was not the one who measured the accused cups. Instead, the other inventor, Mr. Brown, was responsible for making the measurements and the drawings on which the measurements are depicted. Mr. Sorensen's contribution to the drawings was limited to assigning Mr. Brown the task of producing drawings of products that might infringe the '460 patent. Sorensen has pointed to no other testimony from Mr. Sorensen that could serve to authenticate measurements that Mr. Sorensen did not himself take. His declaration is therefore inadequate to authenticate the measurements depicted in Sorensen's three drawings.

To the extent that Sorensen's argument on appeal is that Mr. Sorensen's declaration incorporated authenticating testimony from Mr. Brown by reference, that argument fails. In its brief opposing Homeland's summary judgment motion in the district court, Sorensen cited two brief excerpts from Mr. Brown's deposition. In those excerpts, totaling four and a half pages, Mr. Brown testified that he examined one of the three accused cups (the Magic Bullet cup), that he "found there was an increase in wall thickness . . . between the flow chambers" in that cup, and that he believed the difference in wall thickness was "sufficient to go beyond manufacturing tolerances."

Setting aside the fact that those excerpts do not mention the other two accused cups, Mr. Brown did not authenticate, or even mention, Sorensen's three drawings, nor did he testify that the measurements depicted on those drawings were accurate. Instead, testimony from Mr. Brown that might have authenticated the drawings' measurements occurred in a much later portion of the deposition, which was not before the district court. Sorensen failed to refer to that testimony in its brief in opposition to summary judgment, and it did not even include the relevant portions of the Brown deposition as an exhibit accompanying its brief. Sorensen cannot now rely on portions of the Brown deposition that were not presented to the district court at the time of the summary judgment motion. *See In re Cygnus Telecomm. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1352-53 (Fed. Cir. 2008), quoting *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001) (district court cannot be expected to "examine reams or file cabinets full of paper looking for genuine issues of fact" when the attorneys fail to point out the evidence that supports their case).

On appeal, Sorensen does not argue that the brief excerpts of Mr. Brown's testimony that it cited to the district court were sufficient to create a factual dispute for a jury. Nor would such an argument be plausible given the conclusory nature of that portion of Mr. Brown's testimony. *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements."); *see also Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013), quoting *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment.").

Rather than relying on Brown's conclusory statement in his deposition that he "found that there was an in-

crease in wall thickness . . . between the flow chambers" in the Magic Bullet cup, Sorensen makes a number of arguments attacking the wall-thickness measurements that Homeland provided in photographic form through the declaration of Joe Meyer.  Sorensen asserts that Homeland's measurements were not properly authenticated and that the district court applied a more lenient standard of authentication to Homeland's measurements than it did to Sorensen's.  Sorensen also argues that Homeland's measurements are flawed because they do not represent the average wall thickness from two opposing sides of a cup, which Mr. Sorensen testified was the correct way to measure wall thickness.

Sorensen's arguments attacking Homeland's measurements, however, miss the point.  Under the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 316 (1986), Homeland was not required to produce affirmative evidence of noninfringement.  Instead, as the moving party that would not have the burden of proof at trial, Homeland needed only to point out to the district court "the absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once that occurred, the burden shifted to Sorensen, the nonmoving party with the burden of proof, to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  Even if Homeland's measurements were not properly authenticated and were otherwise flawed, that would not help Sorensen, as Sorensen had no authenticated evidence that the accused cups had walls of increasing thickness.  The district court therefore correctly concluded that Sorensen had not met its burden under *Celotex* in opposing summary judgment.

2.  As an alternative ground for summary judgment of noninfringement, the district court found that Sorensen had failed to produce any evidence that the accused cup molds have "flow chambers" that direct the flow of plastic into adjacent thin-wall areas.  Sorensen did not conduct testing of its own to determine whether molten plastic

flowed from the thicker rib-forming portions of the accused molds into the adjacent walls. Instead, Sorensen relied on evidence that Homeland generated and offered in an effort to prove noninfringement with respect to the "flow chambers" limitation. Sorensen argued that Homeland's evidence actually proved infringement. Additionally, Sorensen sought to undercut the probative value of other evidence that Homeland offered to prove noninfringement with respect to the flow-chambers limitation.

In an effort to demonstrate that molten plastic in the accused molds does not flow from the rib-forming portions to the adjacent walls, Homeland produced a series of "short shots." The short shots are a set of incomplete, partially formed cups that are intended to show how plastic flows through an accused mold during production. Each cup in the series is made by partially filling an accused mold with plastic; each time, the mold is filled with somewhat more plastic than the time immediately before. The first cup in the series therefore consists of just the bottom portion of a cup, while the final one is an almost completely formed cup that is missing only the cup rim. The ridge that forms the top of each short shot is called the "flow front." The flow front shows how far the plastic in the mold had flowed in each partially formed cup.

The flow fronts of each of Homeland's short shots exhibit a slight scalloping around the four ribs of each partially formed cup. Even though each of the four ribs in each of the short shots is a different height, the flow fronts slope gently downward on either side of each rib.

Before the district court, the parties offered competing interpretations of the short-shot evidence. Homeland argued that the short-shot flow fronts do not resemble the flow fronts illustrated in the '460 patent, which are highly scalloped relative to the flow chambers. Homeland therefore asserted that plastic in the accused molds does not

flow as required by the '460 patent. Sorensen, on the other hand, offered the declaration of Mr. Sorensen, who explained that one could establish the direction of plastic flow in a mold by drawing a series of lines perpendicular to the flow front. Because such lines drawn with respect to the slightly concave flow fronts of the Homeland short shots would intersect the ribs, Mr. Sorensen asserted that the short shots prove that plastic flows from the rib-forming portions to adjacent walls in the accused molds.

While Sorensen is entitled to rely on evidence offered by Homeland as affirmative evidence of infringement, the short-shot evidence does not help Sorensen.

As Sorensen itself argues on appeal, the short shots were not made with the same injection-molding parameters used to make the accused cups. The record shows that the accused cups are manufactured with an injection pressure value between 100 and 120 and an injection speed of 35 cubic centimeters per millisecond ($cm^3$/ms). The short shots, however, were manufactured with injection pressures ranging from 40 to 70 and injection speeds ranging from 40 to 50 $cm^3$/ms. Sorensen did not offer any evidence to explain why short shots made with a different process than the accused processes are probative of how plastic flows in the accused processes.

Mr. Sorensen, who was not offered as an expert, testified that the opinion he formed about the short shots was based on his experience in the field of plastic injection molding. Even assuming his testimony would be admissible as lay opinion evidence, *see* Fed. R. Evid. 701, he did not explain why the evidence of short shots that were made under different conditions nonetheless proved that the accused processes infringed.

As in the case of the wall-thickness limitation, Sorensen's showing on the "flow chambers" limitation failed to satisfy the requirements of *Celotex*. Sorensen's affirmative evidence that plastic flows from the rib-

forming portions to the adjacent walls in the accused molds during manufacturing consists solely of a lay opinion based on observations of the output of a process that is different from the accused process. As the district court held, that is not sufficient evidence from which a jury could find that Sorensen has met its burden to prove that the accused injection-molding processes use flow chambers to direct the flow of plastic in the mold.

Sorensen contends that statements made in two prior art patents and in the specification of the '460 patent are sufficient to create a factual dispute over the "flow chambers" limitation. Those statements, Sorensen asserts, "show that it was known and understood in the prior art that the thicker walled sections of a mold cavity that form the flow chambers or ribs feed plastic resin into adjacent thin-wall cavity sections." The prior-art patents that Sorensen points to, however, describe thin-walled plastic lids of the sort used, for example, on coffee cans and that have thinner walls than those on Homeland's cups. Because those patents describe products that are completely different from Homeland's accused cups, they are not probative of infringement. Likewise, the statement in the '460 patent that "[s]ome thin-wall portions of some plastic products" use flow chambers to direct the flow of plastic into adjacent walls, '460 patent, col. 1, ll. 13-17, says nothing about how plastic flows in the accused molds.

Finally, Sorensen attacks the significance of "dye tests" conducted by Homeland and offered through the declaration of Mr. Meyer to prove noninfringement. Those tests purportedly trace the flow of plastic in a mold by placing red dye at certain locations in the mold and then observing how the dye has spread in a finished product. Sorensen offered evidence that Homeland's dye tests were not reliable and were not properly admitted through the testimony of Mr. Meyer, a nonexpert witness. Even assuming that the dye tests are unreliable, however,

Sorensen is still left with no affirmative evidence to support its infringement case with respect to the "flow chambers" limitation. Because Sorensen failed to meet its burden under *Celotex*, summary judgment of noninfringement was properly granted on the "flow chambers" issue.

3. Because Homeland was entitled to summary judgment of noninfringement on both grounds discussed above, we do not need to address the district court's construction of the claim term "threshold rate," which was not implicated in the two portions of the court's summary judgment decision reviewed above. As to the district court's third ground for summary judgment of noninfringement, which relied on the court's construction of the term "threshold rate," we need not and do not address that ground for decision.

At oral argument, Homeland clarified that it was asking us to reach the validity of the '460 patent, as raised in its cross-appeal, only if we modified the district court's construction of the term "threshold rate." Because we have decided this case without addressing the construction of "threshold rate," we decline to reach Homeland's invalidity cross-appeal.

Sorensen also argues that the district court abused its discretion when it denied Sorensen's motion to revise (i.e., reconsider) the summary judgment of noninfringement. Sorensen asserts that the district court should have reconsidered its grant of summary judgment after it was discovered that Mr. Meyer's declaration contained the false statement that the short shots were made according to the same injection-molding process that was used to make the accused products. The false nature of Mr. Meyer's statement, however, does not change the fact that Sorensen had no affirmative evidence of infringement. In fact, the revelation that the short shots were made using a different injection-molding process from that used to

make the accused cups substantially undermines the force of Sorensen's reliance on the short-shot evidence as affirmative evidence of infringement. In any event, Mr. Meyer's false statement did not relate to whether the walls of the accused cups increase in thickness, which was an alternative and independent ground of noninfringement. The district court therefore did not abuse its discretion by denying Sorensen's motion for reconsideration.

Finally, Homeland has requested sanctions against Sorensen for filing this appeal, which it characterizes as frivolous. Homeland's request is rejected, however, because Homeland did not comply with the requirements of Rule 38 of the Federal Rules of Appellate Procedure, which requires that a request for sanctions for a frivolous appeal be filed as a separate motion, not simply included in the appellee's brief. *See Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1358-59 (Fed. Cir. 2003); *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 398 (Fed. Cir. 1996). In any event, we do not view this case as an appropriate case for sanctions based on a frivolous appeal.

**AFFIRMED**